WM. K. GORDON, *Ex'r of* SAMUEL GORDON *vs.* THE MAYOR AND CITY COUNCIL OF BALTIMORE.—*December,* 1847.

The right to tax bank stock was not imparted to the city of *Baltimore* for the first time by the act of 1841, ch. 23.

The act incorporating the city of *Baltimore,* granted the taxing power in the most comprehensive terms, without any limitation as to the objects on which the power was to operate, and was confirmed by the act of 1817, ch. 148, as to property within the city.

The stock of a bank is the representative of its whole property ; and when a tax has been laid on the stock in the hands of the shareholders, the real and personal estate of the company becomes exempt from taxation. To tax both its real and personal property and its stock, would be a double tax, and therefore illegal and unjust.

The act of 1821, ch. 131, sec. 11, did not restrain the city of *Baltimore* from taxing bank stock within her corporate limits; such an intention is not clearly expressed in that act.

The stipulation in the act of 1821, not to impose any further tax upon the banks mentioned in it, during the continuance of their charters, was intended to protect the banks against any additional tax for twenty years, which might be imposed by the legislature for State purposes. The terms further tax, under the circumstances, have no application to the city of *Baltimore.* It was not intended to exempt the banks there situated from all taxation.

The intention of the act of 1841, ch. 23, was to subject the stock of the banks to both State and city taxation. In relation to the State, this was a violation of the act of 1821. The right of the city to tax the stock, is unaffected by any constitutional inhibition.

An act is not necessarily inoperative, where its whole purpose cannot be carried into effect.

It is a sound rule in the exposition of statutes, that they should be so construed as not to suffer any part of them to be defeated or eluded.

The tax on bank stock under the act of 1841, not being paid to the city of *Baltimore* by a stockholder, a non-resident, the city proceeded by way of attachment against the stock. After judgment of condemnation and execution levied upon the stock, the executor of the shareholder paid the city under protest, and brought an action of assumpsit to recover back the money, on the ground that the tax was illegally exacted. *Held,*

1. That money paid on an execution issued upon a judgment of a court of competent jurisdiction, as in this case, cannot be recovered back in assumpsit, although it was afterwards discovered that the money was not due, and the plaintiff is in a situation to prove the fact.

2. Where money has been paid under the sentence or judgment of a court which has no jurisdiction whatever in respect of the subject matter, an action to recover it back may be maintained.

3. With regard to the force and legal effect to be attributed to a domestic judgment, there is no distinction between a judgment of condemnation rendered in an attachment on warrant, in a case where the requisitions of the attachment laws have been complied with, and a judgment *in personam.*

Municipal and private corporations may proceed under the act of 1832, ch. 280, as natural persons may, to recover debts due them by attachment on warrant. And where the attachment is laid upon property within the State, though the debtor is a non-resident, there can be no objection to the jurisdiction of the courts to enforce the claim by condemnation and sale of the property attached.

Exemptions claimed under legislative acts, should be so clearly secured and granted, as to be free from all doubt and ambiguity. Otherwise the immunity claimed will not be considered as surrendered by the public. Various decided cases on this subject considered.

Appeal from *Baltimore* County Court.

This was an action of *assumpsit* brought to January term, 1845, by the appellant against the appellee. The case was submitted upon the following statement of facts:

It is admitted in the above case, that the *President and Directors of the Union Bank of Maryland,* were chartered prior to the year 1821, and that they duly accepted and have complied with the terms and conditions held out to them in and by the State, in an act of the General Assembly of *Maryland,* passed in said year, chapter 131.

It is admitted that the said *William K. Gordon, Executor of Samuel Gordon,* as well as his intestate, were citizens of and residents of the *State of Virginia;* that letters testamentary, with the will annexed, upon the estate of the said *Samuel Gordon,* were in due form of law granted to the said *William K. Gordon* by the Orphans court of *Baltimore* county.

It is also admitted that in the lifetime of said *Samuel Gordon,* the shares of stock held by him in the said *Union Bank of Maryland,* were assessed, valued and taxed by the said *Mayor and City Council of Baltimore,* to the amount of $359 85; that said sum not being paid, an attachment or warrant was issued against *Samuel Gordon,* at the suit of the said *Mayor and City Council of Baltimore,* and prosecuted to judgment of condemnation by default in *Baltimore* county court. Whereupon a *fieri facias* was issued upon certain shares of

OF MARYLAND. 233

Gordon's Ex'r vs. Mayor, &c. of Baltimore.—1847.

bank stock of the estate of the said *Samuel Gordon*, which will appear by reference to paper **A**, which is herewith filed, and which it is agreed shall be considered as a part of this agreement.

*Mayor and City Council vs. Samuel Gordon.*

Paper A.—*Fi. fa.* in case No. 46.

|                                 |          |            |
| ------------------------------- | -------- | ---------- |
| Debt,                           | .    .   | $359 85    |
| Int., .                         | .    .   | 14 11      |
| Costs,                          | .    .   | 15 68      |
|                                 |          | $389 64    |
| June 15th, 1843, received payment |        | $389 64    |
| for N. TRACY, sheriff,          | Com., &c.  .  | 20 51 |
| *T. J. Laws.*                   |          | $410 15    |

On the back whereof is the following, to wit:

Whereas I, *Wm. K. Gordon*, *executor of Samuel Gordon*, deceased, have paid the tax and charges of the annexed Bill, Now I do hereby protest against the exaction of said payment as against law and oppressive, and insist upon the re-payment of the same, and all costs and interest by the city of *Baltimore*, when the illegality shall be ascertained by the decision of the Supreme Court of the *United States*, or otherwise.

Notice of the above protest admitted.     N. TRACY, *Sh'ff.*

It is admitted that the said *Wm. K. Gordon*, as executor, paid upon the said judgment and *fieri facias* for the said tax, interest and costs, the sum of $410 15, at the same time protesting against the exaction of said payment, as against law and oppressive, and insisted that the same and all costs and interest should be repaid by the city of *Baltimore;* that said amount of taxes above mentioned has been paid over to the *Mayor and City Council of Baltimore.*

It is also admitted that the said taxes amounting to $359 85, so as aforesaid levied by the said *Mayor and City Council of Baltimore,* on the stock so as aforesaid held by the said *Samuel Gordon,* and which was so as aforesaid paid by the said *William K. Gordon,* executor; that the stock in said bank on which the said taxes were so levied and paid, were duly and properly assessed to said *Samuel Gordon,* as a part of his

assessable property, under and in conformity to the acts of Assembly and ordinances of the city of *Baltimore*, in that case made and provided, and that said taxes were duly levied by the said *Mayor and City Council of Baltimore*, for the following years, viz: 1842, 1843 and 1844. It is also admitted that the said taxes so as aforesaid levied and collected by the said *Mayor and City Council*, of *William K. Gordon as executor of Samuel Gordon*, were so levied and collected as city taxes from the said *Gordon*, for the purposes and uses of the said city of *Baltimore*.

It is also admitted that application was made to the said *Mayor and City Council of Baltimore* by the said *William K. Gordon*, executor of *S. G.*, and others, for the refunding by the said city of the taxes so as aforesaid paid by the said *William K. Gordon*, executor of *S. G.*, and that the said *Mayor and City Council of Baltimore* passed the resolution No. 119, of the resolutions of the said *Mayor and City Council of Baltimore*, at its January session, 1845. And said resolution it is agreed shall be a part of this statement, and may be read as such from the printed ordinances of the city of *Baltimore*.

And it is also agreed that any ordinance of the city of *Baltimore*, or any act of Assembly which either party may desire to use in the hearing of this case, either in the county court or Court of Appeals, may be used and read as part of this statement, from the printed ordinances of the city of *Baltimore* and the printed acts of Assembly of *Maryland*, to have the same effect as a part of this statement as if inserted at large and duly authenticated.

It is further agreed that it shall be competent for the court to draw such and other inferences of facts from those above agreed on, as a jury could do if the same were offered in evidence to them. It is further agreed that if upon the aforegoing statement of facts, the court shall be of opinion that the said *Wm. K. Gordon*, executor of *S. G.*, is entitled to recover back from the said *Mayor and City Council of Baltimore* the taxes so as aforesaid paid by him, or any part thereof, then the court shall render judgment against the said *Mayor and City Council*

*of Baltimore* for the amount of said taxes, or so much thereof as the court shall be of opinion the said *William K. Gordon*, executor of *S. G.*, is entitled to recover back from the said *Mayor and City Council of Baltimore* with costs.   But if the court shall be of opinion that the said *William K. Gordon*, executor of *S. G.*, is not entitled to recover back the said taxes so as aforesaid paid by him, or any part thereof, from the said *Mayor and City Council of Baltimore*, then the court shall render judgment in favor of the said *Mayor and City Council*, the defendants in this action, with costs of suit.

And it is agreed that either party may appeal from the judgment of *Baltimore* county court upon the aforegoing statement; and that upon appeal by either party, the Court of Appeals may render judgment on the aforegoing statement of facts and agreement.

The county court rendered judgment *pro forma* for the defendants, and the plaintiff below prosecuted this appeal.

The cause was argued before ARCHER, C. J., DORSEY, MAGRUDER and MARTIN, J.

By DULANY and MEREDITH for the appellant, and

By PRESSTMAN and McMAHON for the appellee.

MARTIN, J., delivered the opinion of this court.

In this case the tax in controversy was imposed by the *Mayor and City Council of Baltimore*, in pursuance of an act of the General Assembly of *Maryland*, passed on the first of April, 1841 ; and it has been contended on the part of the appellant, that this act, so far as it subjected the stock of the *Union Bank of Maryland* to valuation, assessment, and taxation, was unconstitutional and void; on the ground that it impaired the obligation of the contract created between the State and the Bank, by the act of Assembly of 1821, ch. 131.

This is the first and principal question raised for our opinion upon this record.

The tax thus levied by the appellee upon the shares of stock

held by the appellant's testator in the *Union Bank,* was imposed in conformity with the act of 1841, ch. 23; but it is a mistake to suppose that the right to tax the stock was imparted to the city for the first time by the provisions of that statute. By the act of Assembly, incorporating the city of *Baltimore,* the taxing power is granted in the most comprehensive terms, and without any limitation as to the objects on which the power is to operate. And by the subsequent act of 1817, ch. 148, sec. 4, it is declared,

" That the *Mayor and City Council of Baltimore* shall have power to lay and collect direct taxes on the assessment of private property within the city, to such amount as may be thought necessary for the public or city purposes, and may enforce the collection of all dues and impositions, except fines, &c. in the same manner as is now provided with respect to city taxes."

It is perfectly understood that the stock of a bank is the representative of its whole property; and when a tax has been laid on the stock in the hands of the shareholders, the real and personal estate of the company becomes exempt from taxation. To tax both the real or personal property, and the stock, would be a double tax, and therefore illegal and unjust. 12 *G. & J.* 117. And it does not appear that the stock of this bank was taxed *eo nomine* by the city, prior to the year 1842, and then under and by virtue of the act of 1841, ch. 23; but as the *situs* of the stock was within the limits of the city, there can be no doubt that at the period when the contract *of 1821* was entered into between the State and the banks, the city possessed the right to have valued and assessed the stock in the hands of a shareholder, as a legitimate object of taxation.

By the 11th section of the act of 1821, ch. 131, it is declared:

" That upon any of the aforesaid banks accepting and complying with the terms and conditions of this act, the faith of the State is hereby pledged not to impose any further tax or burden upon them during the continuance of their charters under this act.

And it has been contended by the counsel for the appellant,

that it was the object of the contract thus created, not only to restrain the Legislature from imposing additional taxes upon the banks, during the continuance of their charters, but also to secure them against taxation by the city; and that it was the imperative duty of the State, in the exercise of her unquestionable control over the constitution and laws of this municipal corporation, so to have modified or repealed the taxing power of the city, as to have accomplished what is asserted to have been the design of this contract, an absolute immunity from city taxation.

The counsel for the appellee have denied that this is to be considered as the true construction of the contract, and have insisted, that as the object of the contract was to operate on the taxing power; and as the contract itself was created by a legislative grant of certain immunities and privileges, private in their character, that interpretation is to be placed upon it if there is any ambiguity in its terms, which is more favorable to the State; and that the exemption claimed by the appellant cannot be sustained unless the court is satisfied, that an intention to liberate the bank from city, as well as State taxation, is clearly and indisputably expressed.

This proposition is maintained, we think, by the adjudged cases, both in England, and in the tribunals of this country.

In the case of the *Providence Bank vs. Billings & Pittman,* 4 *Pet.* 561, the question arose with respect to the right of the Legislature of *Rhode Island* to impose a tax upon the bank, which had been chartered in the usual mode, and without any stipulation in reference to the taxing power of the State.

The right of the State to impose the tax was upheld by the Supreme Court, and the late Chief Justice, in delivering the opinion, said:

" That the taxing power is of vital importance—that it is essential to the existence of government, are truths which it cannot be necessary to reaffirm. They are acknowledged and asserted by all. It would seem that the relinquishment of such a power is never to be assumed. We will not say that a State may not relinquish it; that a consideration sufficiently

valuable to induce a partial release of it may not exist: but as the whole community is interested in retaining it undiminished, that community has a right to insist that its abandonment ought not to be presumed, in a case in which the deliberate purpose of the State to abandon it does not appear."

In the case by the *Stourbridge Canal* against *Wheeley*, 2 *Barn & Adolph.* 792, *Lord Tenterden*, when speaking of the rule, by which an act of Parliament, incorporating a Canal Company, was to be expounded, says:

" The canal having been made under the provisions of an act of Parliament, the rights of the plaintiff are derived entirely from that act. This, like many other cases, is a bargain between a company of adventurers and the public, the terms of which are expressed in the statute; and the rule of construction in all such cases is now fully established to be this:—that any ambiguity in the terms of the contract must operate against the adventurers, and in favor of the public; and the plaintiffs can claim nothing which is not clearly given to them by the act."

In the case of the *Elsebe*, 5 *Rob.* 182, *Sir William Scott* stated with great clearness, the difference between the rules by which the grants of the Crown are interpreted, and those which are applied in the construction of the grants of individuals. He said,

"Against an individual, it is presumed that he meant to convey a benefit with the utmost liberality that his words will bear. It is indifferent to the public in which person an interest remains, whether in the grantor or in the taker; with regard to the grant of the sovereign, it is far otherwise. It is not held by the sovereign himself as private property; and no alienation shall be presumed, except that which is clearly and indisputably expressed."

The same doctrine is announced in *Barrett vs. The Stockton and Darlington Railway Company*, 2 *Manning and Granger*, 134, 40, *Eng. Com. Law Rep.* 298, and in the very able opinion delivered by the Chief Justice of the Supreme Court, in the case of the *Charles River Bridge* against the *Warren Bridge*, 11 *Pet.* 420.

With this rule of construction for our guide, we proceed to an examination of the terms of the contract of 1821, as they are expressed in the statute; and the question is, whether the exemption claimed by the *Union Bank,* is so clearly secured and granted, as to be free from all doubt and ambiguity?

On this point, our opinion is adverse to the claim asserted by the appellant.

When the contract between the State and the banks was entered into in the year 1821, the banks embraced by the statute were subject to a tax of twenty cents on every hundred dollars of the capital stock actually paid in, or which should thereafter be paid in, to be appropriated as a fund for the establishment of free schools; and the stipulation not to impose *any further tax* "upon them during the continuance of their charters," was intended, we think, to protect the banks against any *additional* tax, for the period of twenty years, which might be imposed by the legislature for State purposes. Under the circumstances of this case, the words "further tax," have no application to the city of *Baltimore.* And if the object of the contract had been, as is maintained by the counsel for the appellant, to exempt the banks from *all* taxation, whether imposed by the State or city, it is impossible to believe that the parties would not have employed more comprehensive terms, and have used language better calculated to accomplish their purpose.

It has been seen, that on the 1st April, 1841, the legislature passed an act for the general assessment and valuation of property in the State, and to provide a tax to pay the debts of the State.

By the first section, it is enacted among other things, that all stocks or shares in any bank, incorporated by the State, shall be valued agreeably to the directions of the act, and shall be chargeable according to such valuation, with the public assessment.

By the 59th section it is declared, that so much of the several acts heretofore passed in relation to the assessment and collection of taxes, as may come within the provisions of this

act, and conflict therewith, are repealed : and by the 60th section, that from and after the year eighteen hundred and forty-one, all county, district and city taxes shall be assessed on the property, valued under the provisions of this act, any thing in any other act to the contrary notwithstanding.

By the 29th section it is provided, that any person who shall feel himself aggrieved by the decision of the appeal tax court, upon any question arising upon the review of the valuation aforesaid, whereby property is valued, which in the opinion of such person ought not to be valued, &c. may prosecute an appeal from the decision aforesaid to the Court of Appeals: and by the 34th section it is declared, that immediately after the determination of any such appeal, it shall be the duty of the clerk of the Court of Appeals to send a copy of the opinion of the court to the appeal tax court, to be preserved by them; and it shall be the duty of the appeal tax court, previous to the levy for the year 1842, being made by the *Mayor and City Council of Baltimore*, to review, and correct if necessary, the valuations as aforesaid made, in conformity with the opinions which may be expressed by the Court of Appeals, and report the same to the *Mayor and City Council.*

In the case of *Gordon* against the *Appeal Tax Court*, 3 *How.* 133, it was decided by the Supreme Court, that the State was restrained from taxing the banks, chartered previous to the year 1821, by the contract to which we have adverted, during the continuance of their charters; and the proposition presented by the counsel for the appellant, is that the taxing power of the State and of the city, both with respect to the objects to be taxed, and the mode in which the taxes were to be collected, are indissolubly connected by the act of 1841, ch. 23; and that as the State was disabled from taxing the banks for twenty years, no tax could be imposed upon the stock for that period by the city of *Baltimore.*

To this proposition we cannot assent.

It was the intention of the legislature by the act of 1841, ch. 23, to subject the stock of this bank to both State and city taxation. This is plainly declared by the provisions of the

statute. But by the construction which has been placed upon the contract of 1821, by the Supreme Court, the State is disabled from taxing the stock for State purposes, for the period of twenty years, and the object and purpose of the law has been in this way partially frustrated. The right, however, of the city to tax the stock, according to the interpretation which we have put upon the contract, remains unaffected by any constitutional inhibition. It was, as we have already said, the intention of the legislature to subject this property to a city tax. And can it be pretended, upon any fair principle of interpretation, that the power which remains unimpaired and in full force, so far as the stipulations of the contract are concerned, should be extinguished or arrested in its operation, because the whole purpose of the legislature cannot be carried into effect? We think not.

It is a sound rule in the exposition of statutes, that they should be so construed as not to suffer any part of them to be defeated or eluded.

The taxing power of the city was unfettered by any constitutional restrictions; and the tax imposed on the stock of the *Union Bank* in this case, was in accordance with the provisions of the act of 1841, ch. 23. It must therefore be maintained.

It appears from the agreed statement of facts exhibited by this record, that in the lifetime of *Samuel Gordon,* the shares of stock held by him in the *Union Bank of Maryland,* were valued, assessed and taxed by the *Mayor and City Council of Baltimore,* amounting to the sum of $359 85; and that this sum not having been paid, an attachment on warrant was issued against *Samuel Gordon,* a resident of *Virginia,* and prosecuted to judgment of condemnation by default in *Baltimore* county court; upon this judgment, a *fieri facias* was issued and levied upon the shares of stock belonging to the estate of the said *Gordon,* and the claim having been paid by the appellant as his executor, under protest, an action of assumpsit was instituted in *Baltimore* county court, for the purpose of recovering from the appellee the amount alleged to have been illegally exacted.

And the question presented for our consideration on this branch of the case is, whether an action to recover back the money thus paid on the execution, could be maintained by the appellant, assuming that the tax imposed upon the stock was illegal and void?

It is an established principle, and not disputed by the counsel for the appellant, that money paid on an execution issued upon a judgment of a court of competent jurisdiction, cannot be recovered back, although it was afterwards discovered that the money was not due, and the party is in a situation to prove the fact.

And it is equally well settled, that where money has been paid under the sentence or judgment of a court which has no jurisdiction whatever in respect of the subject matter, an action to recover it back may be maintained.  *Newdigate vs. Davy*, 1 *Lord Ray*, 742.

With regard to the force and legal effect to be attributed to a domestic judgment, pronounced by a court of competent jurisdiction, there is no distinction between a judgment of condemnation rendered in an attachment on warrant, in a case where the requisitions of the attachment laws have been complied with, and a judgment *in personam*.  *Taylor & McNeal vs. Phelps*, 1 *Har. & Gill*, 492.  They stand upon the same principle; they both import absolute verity; are equally conclusive with respect to the subject matter adjudicated, and cannot be re-examined or impeached in any collateral proceeding.

In the argument on this part of the case, several points were raised and discussed by the counsel for the appellant; but in our opinion, the right of the plaintiff below to maintain this action, supposing that the tax imposed by the *Mayor and City Council of Baltimore* was illegal and unauthorised, depends upon the single question, whether the judgment of condemnation rendered in the attachment suit, was the act of a court of competent jurisdiction.

In the case of *Dugan vs. The Mayor and City Council of Baltimore*, 1 *G. & J.* 499, it was held by the Court of Appeals, that the imposition and assessment of a tax by the *Mayor and*

*City Council*, in pursuance of their charter, created a legal obligation to pay such tax, and that it could be recovered in an action of assumpsit.

In delivering the opinion of this court, Chief Justice *Buchanan* said:

"In the *Mayor and City Council vs. Howard*, 6 *Har. & John.* 383, it was decided by this court, in relation to the 10th section of the act of incorporation, that the giving a remedy by distress or action of debt, was cumulative only, and did not take away the action arising by implication, or the legal obligation to pay a claim created by law. The tax for which this suit was brought, was imposed by virtue of that act, the imposition and assessment of which created the legal obligation to pay, on which the law raised an implied assumpsit, independent of the notice required by the fifth section of the ordinance, as a foundation for a summary mode of recovery, and unaffected by the omission of the collector to do his duty, which omission, though it caused the loss of the right to collect the tax by distress, and sale of the goods, left the right to recover on the original implied assumpsit unimpaired—an assumpsit raised by the law on the imposition and assessment of the tax, and not to arise on the delivery by the collector of an account of the assessment and tax."

By the act of Assembly of 1832, ch. 280, it is declared, that the provisions of the attachment law of 1715, ch. 40, with its supplements, shall be held to apply to all debts due, and claims accruing to any corporations, to the same effect as if such corporations were natural persons; language sufficiently comprehensive to embrace all classes of corporations, whether municipal or private; and although the person against whom this attachment was directed was a non-resident, yet as the *res*, the stock, upon which the process operated was within the State, we can perceive no objection to the jurisdiction of the court.

We think, therefore, that the action instituted in this case by the appellant, could not be maintained; and on both grounds, affirm the judgment of the county court.

**JUDGMENT AFFIRMED.**