CITED in State v. Bentley, 3 Zab. 545 ; State v. Mellick, 1 Dutch. 564 ; State Treas. v. Som. & Eas. R. R. Co., 4 Dutch. 25 ; State v. Jersey City, 5 Dutch. 174 ; Mech. & Tr. Bk. of J. C. v. Bridges, 1 Vr. 115 ; State v. Miller, 1 Vr. 370 ; State v. Miller, 2 Vr. 526 ; State v. Jersey City, 2 Vr. 577 ; State v. Douglass, 5 Vr. 87 ; State v. Mills, 5 Vr. 180 ; McGavisk v. State, 5 Vr. 513 ; State v. Comm'rs of R. R. Taxation, 8 Vr. 230 ; State v. Com. of R. R. Tax., 9 Vr. 474 ; Stonnington Sav. Bk. v. Davis, 1 McCar. 290.

---

THE STATE (STEPHEN VAIL, PROSECUTOR,) v. JOSEPH C. BENTLEY, COLLECTOR OF MORRISTOWN.

1. A *certiorari* will lie to review an erroneous assessment of taxes, although the prosecutor did not apply to the commissioners of appeal for relief. But neglecting to apply for relief to the commissioners is good ground for the court, in their discretion, to refuse the *certiorari*.

2. It is not a sufficient reason for setting aside an assessment of taxes, that the year in which the town meeting was held at which they were raised does not appear in the record, if it can be shown by parol proof.

3. A collector has no right, for contingencies or any other purpose, to add any thing to the amount of tax voted by town meeting ; the taxing power must provide for contingencies, losses, &c., as well as for the objects directed by law.

4. The stocks of an incorporated company in this state, when the company by its charter is exempt from taxation, are also exempt from taxation in the hands of stockholders.

5. Stocks in foreign corporations, held by inhabitants of this state are subject to taxation.

The State v. Bentley.

This was a *certiorari*, sued out by Stephen Vail, the prosecutor, to review the assessment of taxes made by the assessor of the township of Morris, in the year 1851.

By the case, it appeared that there was no date of the year to the minutes of the town meeting of 1851, by which these taxes were raised; that the assessor had, of his own volition, added to the amounts directed to be raised $998.71 for contingencies, and $861.57 to the $2000 ordered to be raised for roads; that the prosecutor was assessed for the stock held by him in the Morris and Essex Railroad, the property of which, by its charter, is exempt from taxation, and also for stock held by him in the Merchants and Traders Bank of New York and other foreign corporations, and that township and county taxes were blended together.

The case was argued before the CHIEF JUSTICE, and POTTS and ELMER, Justices, by *Whelpley*, for plaintiff, and *Vroom* and *Dalrymple*, for defendant.

*Whelpley*, for plaintiff.

1. This blending separate taxes is contrary to the express words of statute.

2. The minutes of town meeting are a *record*, and date cannot be supplied by parol.

3. The additional taxes raised are without authority of law, and avoid the whole assessment. The town meeting and board of freeholders, not the assessor, are the proper judges of contingencies, as well as of the main tax. 15 *Mass.* 144, *Lewis* v. *Burnham;* 1 *Greenl.* 339, *Elwell* v. *Shaw;* 2 *Ib.* 375; 13 *Mass.* 272; 1 *Ib.* 181; 5 *Ib.* 147.

The act of 1852 cannot give validity to these illegal proceedings. The legislature have no power to impose upon a township, by retro-active legislation, taxes that they never voted or that were never legally assessed.

*Dalrymple* and *Vroom*, for defendant.

1. This writ ought to be quashed, as improvidently allowed; prosecutor ought to have appeared before the commissioners of appeal. The writ must be allowed in open court; the allow-

ance is in discretion of the court, and it will not be allowed for mere technical causes. 15 *Wend.* 198, *People* v. *Supervisors of Alleghany;* 4 *Pick.* 25, *Ex parte Adams;* 9 *Pick.* 46, *Freetown* v. *Bristol;* *Coxe* 318, *State* v. *Anderson;* 1 *Lord Ray.* 580, *King* v. *Inhabitants;* 3 *Harr.* 49, *Haines* v. *Champion;* 3 *Harr.* 372, *State* v. *Ten Eyck;* 2 *Hill* 14, *Matter of Mount Morris Square;* 23 *Wend.* 283 ; 5 *Hill* 264, *Wood* v. *Randall;* 2 *Stran.* 932, *King* v. *Worcester.*

2. The date of town meeting is well supplied by parol proof; this is not to contradict record.

3. The excess of assessment for contingencies is a power well established by custom, independent of the act of 1852 (*Pam.* 526), which declares it no cause of reversal.

ELMER, J. On the part of the defendant in this *certiorari,* it is insisted that the writ ought to be dismissed, on the grounds that great injury will result to the township if it be sustained, and the taxes assessed declared to be illegal : and that an appeal ought to have been first taken to the commissioners of appeal in cases of taxation. Undoubtedly the court may dismiss a *certiorari* at any stage of the proceedings, 3 *Zab.* 85. But the case before us involves very important principles of law, arising out of the construction of a tax law altogether different from those before in force, and it is therefore proper that they should receive a judicial construction. As a general rule, I think a *certiorari* ought not to be allowed, even for the decision of legal questions arising upon the tax laws, until there has been an appeal ; but it always rests in the sound discretion of the court at what stage of the proceedings the *certiorari* shall be granted, or whether it shall be granted at all ; and as in this case the writ was allowed upon special application, I see no reason to interfere with it.

The first objection made to the assessment returned is, that the record of the proceedings of the town meeting, entered in the clerk's book, does not state the time when the meeting was held. But I do not think a correct record is indispensable to render the proceedings of the town meeting valid. It clearly appears by the proof, that in point of fact the meeting was

held at the proper time and place, and that the meeting duly ordered certain sums to be raised for schools, for the poor, and for the opening and repair of the highways. By the sixteenth section of the act incorporating the inhabitants of townships, &c., (*Rev. Stat.* 1025) the clerk is required to enter, in a book to be kept for the purpose, the names of the persons, and the office to which they are elected at town meeting, and the proceedings of such meetings, which shall be signed by the presiding officer of the meeting, and attested by the clerk. The record thus made is undoubtedly good evidence, and perhaps the best evidence of the doings of the meeting; but the law does not make it so essential that the omission of the clerk to comply with its directions will deprive the public of its officers or of the money ordered to be raised. Such a record is not like the record of a judgment, to which so much solemnity is attached that it cannot be contradicted, but is rather to be regarded as a collateral or subsequent memorial of the facts, like a registry of marriages and births, in which cases other legal proof is admissible.

It appears that the money actually ordered to be raised for the aforesaid purposes, added to that ordered to be raised in the township for county purposes, amounted in the aggregate to the sum of six thousand seven hundred and twenty-four dollars forty-three cents. The sum actually assessed was eight thousand five hundred and eighty-four dollars seventy-one cents, being an excess of eighteen hundred and sixty dollars twenty-eight cents above the amount ordered, or more than twenty-five per cent. upon the whole sum ordered. This excess, which is far beyond the fees of the officers, is not authorized by the laws empowering the assessors to levy and assess taxes. Those laws do not authorize them to go beyond the sums ordered by the boards of chosen freeholders and the town meetings, except for fees of assessing, collecting, and paying, and, in certain cases, of default and deficiency. *Rev. Stat.* 185, 1002, 1005, 1009, 1023.

It has no doubt been the general practice throughout the state for the assessors to add to the sums ordered to be raised, and to the fees for assessing and collecting, a sufficient amount

to compensate for a possible reduction of their assessments by the commissioners of appeal and for losses and other contingencies. But such a course is not warranted by law, and is not indispensable to the end in view, it being in the power of the freeholders and of the town meetings to order such sums to be assessed for the particular objects to be provided for as will produce the net amounts required, after due allowances for such losses and contingencies. It is certainly far safer that this discretion shall be exercised by those bodies, than that the assessors shall assume to add to the taxes at their own discretion. If inconvenience shall be found to result from a strict adherence to the law, as it stands, it belongs to the legislature to remedy it, and not to the court: our duty is to interpret, not to make the law. That the construction of the tax laws here indicated is the correct one, seems to have been the opinion of the legislature itself, the recent act, approved March 26th, 1852, (page 526) having provided that no assessment of taxes shall be set aside because the aggregate amount of money levied or assessed in any township for taxes is greater than called for by the law, resolution, or resolutions, raising, voting, or granting the same, but that the court shall amend the assessment, and reduce the same to the proper and just amount, and thereupon affirm the same, according to such amendment and reduction, and reverse the same, as to the excess only. I am therefore of opinion that the assessment before us is illegal, and, so far as the prosecutor is concerned, must be reduced in conformity to the aforesaid act, and the excess set aside.

Another objection to the assessment is, that the prosecutor was assessed for the value of certain shares of stock of "the Central Railroad Company of New Jersey" and of "the Morris and Essex Railroad Company." These shares it is insisted are exempt from taxation, by express provisions contained in their respective charters, which the tax law of 1851 did not intend to repeal. The provisions of the charters are, in this respect, substantially the same. The fourteenth section of the charter of the first named company, originally chartered by the name of the Somerville and Easton Railroad Company, declares, "that as soon as the net proceeds of said railroad.

shall amount to six per centum upon its cost, the said corporation shall pay to the treasurer of the state a tax of one half of one per centum on the cost of said road, to be paid annually thereafter on the first Monday of January of each year; *provided*, that no other tax or impost shall be levied or assessed upon the said company." *Acts of* 1847, *p.* 134.

The fifteenth section of the charter of the Morris and Essex road is the same, except that the state tax is not to be paid until the net proceeds shall amount to seven per centum on its cost. *Acts of* 1835, *p.* 30.

Both acts require statements of the cost and annual statements of the net proceeds to be made to the legislature. These statements have been made, but the net proceeds have not yet, in either case, reached such a per centum as to require any tax to be paid, and none has been paid.

The first and important question to be decided in reference to these limitations of the power of taxation is, whether they do, in terms or by fair and necessary construction, apply to the levy and assessment of taxes on the value of the stock in the hands of the individual stockholders, as well as to a levy and assessment directly on the corporations, as such. The language of the provision is, that the *corporation* shall pay a certain tax to the state treasurer, and that no other tax shall be levied or assessed upon the said *company*. Does this expression "said company," as here used, include the several stockholders who compose the company, or is it an expression, intended to be exactly synonymous with the prior expression "said corporation?" This must be ascertained, as well from the context as by looking at the general scope and object of the provision itself.

It has been finally settled, by repeated decisions of this court, affirmed by the Court of Errors, that similar provisions in the charters of the Paterson and Hudson River Railroad Company and of the Camden and Amboy Railroad Company exempt not merely the franchises, but all the property of those companies held for the necessary purposes of their business, from all taxes for state, county, city, or township purposes. 2 *Harr.* 80; 3 *Harr.* 12, 71; 1 *Zab.* 557.

A share of stock is a right to partake, according to the amount of the party's subscription, in the dividends declared, and a right to a *pro rata* distribution of the effects on hand, not forfeited at the time of the dissolution of the company or the expiration of its charter. The value of the share is compounded of the chance of dividends and of the actual or prospective value of the property; so that although the title of the property is legally vested in the corporation, which is altogether a separate person from the individual stockholder, who, as an individual, has no right to use or dispose of it, yet the stock does substantially represent the corporate property. A tax on the value of the stock is therefore, if not in form, certainly in substance and effect, a tax on the value of the corporate property.

The power of taxation is unquestionably of paramount importance to the state, and must not be restrained or defeated by mere doubtful inferences. I concur entirely in what was said by Chief Justice Taney, in the case of *Charles River Bridge* v. *Warren Bridge* (11 *Peters* 544), that in grants by the public nothing passes by implication, and that any ambiguity in the terms of the contract must operate against the adventurers, and in favor of the public. But language must be interpreted according to its fair and natural import, and so as to effect the object intended, not merely in form, but in substance. Great and important works of a public character, by which all the citizens of the state were to be directly or indirectly benefitted, requiring a heavy expenditure, and admitting of doubt as to their ultimate profit, were to be constructed by private capital. Individuals having the means were encouraged to subscribe and pay the money necessary to complete the undertakings, by provisions, that until the net earnings of the company should amount to a reasonable and fixed per centum, that is until these individual subscribers should receive certain dividends, the corporation should pay no bonus or tax; and when the prescribed dividends should be realized, then the corporations should pay a fixed tax, and that no other tax or impost should be levied or assessed upon the said companies. The contract was with the stockholders individually, as well

The State v. Bentley.

as collectively. Unless we assume that the legislature meant "to keep the word of promise to the ear, and break it to the hope," we must conclude they meant to exempt the property of the stockholders, vested in those undertakings, from any other than a definite and prescribed tax in any form. Any other construction would make the limitation illusory and of no practical importance. If it meant merely that the corporations should not be taxed, by their corporate names, for the value of their property, but that the stockholders themselves might be taxed for the value of their several interests therein, what advantage was it to them? Certainly none, unless we are to suppose that the legislature would impose a double tax. But this the legislature has carefully guarded against in the tax law under which this assessment was made, and, by the manner of doing so, has shown very clearly that, in its opinion, the stock of the individual stockholders is substantially the same thing as the property owned by the corporations. Exemption four, of section five of the law of 1851, expressly exempts from taxation "so much of the property of incorporated companies, represented by the capital stock thereof, as by virtue of this act is taxed in the hands of the stockholders." Upon the principle adopted by the act itself, if the property is taxed to the stockholders, it is not to be taxed to the corporation; and upon the same principle, if not taxable to the corporation, it is not taxable to the stockholders. Another clause of that section exempts colleges, academies, or seminaries of learning, libraries, &c., from taxation. Would it be a fair interpretation of the other sections of this law, that this kind of property may nevertheless be taxed in the hands of stockholders at its actual value if it happens to be divided into shares having a market price, as some of it is or may be? I cannot think so. And by parity of reasoning, I think property which by other laws, not specifically or by necessary implication repealed, or by reason of being contracts not capable of being repealed, is exempted from a tax levied or assessed on the corporation, is likewise exempt from a tax assessed for its value upon the respective stockholders. The court certainly

ought not so to interpret this or any other act as to produce positive injustice, unless it will bear no other meaning.

I am therefore of opinion that, upon principle, this stock was not taxable. But even if I was disposed to take a different view of this subject, I should hold myself bound to yield my own opinion to what seems to be the clear weight of authority. Numerous cases have occurred in other courts involving the same question, and all of them have been decided in conformity with the views above expressed. In the case of *Johnson* v. *The Commonwealth* (7 *Dana* 342), the Court of Appeals of Kentucky ruled that where the act incorporating one of the banks exempted the bank from any other than a certain tax, the stockholders were not taxable for the value of their respective shares under a general law taxing stocks in the hands of stockholders.

The courts of Massachusetts, Maine, New Hampshire, and Maryland have held that a tax on a corporation for the value of its property, and on the stockholders for the value of their shares, would be double taxation, which involves the same principle. 10 *Mass. R.* 514 ; 4 *Metc.* 184 ; 9 *Metc.* 199 ; 3 *Greenl.* 133 ; 9 *N. Hamp. R.* 423 ; 5 *Gill* 231 ; 12 *G. & John.* 117.

In the case of *Gordon* v. *The Appeal Tax Court*, 3 *How.* 133, the Supreme Court of the United States decided, that where an act of the legislature of Maryland provided that upon certain banks complying with the terms and conditions of the act, the faith of the state was pledged not to impose any further or other tax or burthens upon the said banks during the existence of their charters : this was a contract with the stockholders, whereby they were exempt from a tax levied upon the value of their respective shares of the stock. The judge who delivered the opinion of the court argued that this was the meaning of the pledge from various expressions contained in the acts, none which more strongly indicated such a meaning than those contained in the acts now under consideration. This case seems to me to be in point, and being a decision upon the constitutionality of the tax, by the court whose decisions upon such questions are binding upon us, it is our duty to conform to it.

The State v. Bentley.

It was however insisted, on the part of the township, that whatever may be the true meaning of the exemptions contained in the acts incorporating the Paterson and Hudson River Railroad Company and the Camden and Amboy Railroad Company, which grant the exemption from the beginning, that in the cases of the charters now in question, taxes may be assessed against the companies or against the stockholders until the tax of one half of one per cent. shall actually be paid to the state. I cannot agree to such an interpretation of these charters. It would be to hold that the tax should be levied only while the companies were least able to bear it, and should cease when their means were increased. The argument rests on the assumption, that the sole reason for the exemption was the payment of the fixed rate into the treasury of the state, whenever that should become payable, and that such fixed rate should be regarded as a commutation of all other taxes. In the nature of things other considerations dictated this provision, considerations having reference to the interests of the stockholders and to the encouragement of improvements calculated greatly to benefit the community. I am entirely satisfied that the fair import of the charters, and of the tax law itself, is that the stockholders are exempt from any other taxes than those payable to the state treasury, and that, consequently, so much of the prosecutor's tax, as was produced by a tax on the value of his shares in those companies, must be deducted from the aggregate of his tax, and the assessment against him therefore set aside.

Besides the tax on the railroad stocks, the prosecutor was assessed for the value of certain stocks he owned in corporations within the state of New York, and it is objected that such stocks are not taxable by the laws of this state. That the law does, in terms, require all citizens of this state to be taxed for the actual value of such stocks, cannot be questioned, its language being, " that the term personal estate, shall be construed to include stocks in corporations, whether within or without this state." The act adopts the principle, that all property which consists of choses in action, that is evidences of a right or debt, having an actual value, shall be assessed to the owner,

having his regular domicil within this state, at the place of his residence, without regard to the nature of the property or to the locality of the person or corporation owing the debt or whose property is represented by the stock. Unless the proposition can be maintained, that this state has no right to tax its citizens for the value of property they own, situate without its territorial limits, this tax must be held valid. I am not aware of any constitutional or legal principle or of any authority which impeaches such a right. In the absence of constitutional restrictions, the citizen may be taxed in the discretion of the legislature, either personally, by way of· poll tax, or upon the value of his property, wherever situate or however elsewhere taxed, to such extent as the public exigencies may require. Such a power may undoubtedly be abused, as all other powers may be. But in the language of Chief Justice Marshall (4 *Wheat.* 428), "The only security against the abuse of this power is found in the structure of the government itself. In imposing a tax, the government acts upon its constituents : this is in general a sufficient security against erroneous and oppressive taxation. The people of a state, therefore, give to their government a right of taxing themselves and their property ; and as the exigencies of the government cannot be limited, they prescribe no limits to the exercise of this right, resting confidently on the interest of the legislature and the influence of the constituents over their representatives to guard them against its abuse." It is besides obvious to remark, that the very nature of choses in action is that they have no locality, but follow the person of the owner. As they sometimes virtually represent property that is situated elsewhere, and it may be taxed elsewhere, there is in some cases a double taxation ; but this results from our peculiar situation, and although undoubtedly to be avoided, and not to be assumed as intended without plain enactments admitting of no other reasonable interpretation, yet so far as it is produced by that conflict of laws which arises from a variety of sovereignties so intimately connected as ours, it frequently cannot be avoided, and at all events has not been attempted to be prevented, by either the national or the state constitutions. I am of opinion that the tax on this stock was

rightly imposed, and that the assessment thereon should be confirmed.

POTTS, J. The object of the *certiorari* in this case was to bring up the assessment made by the assessor of the township of Morris, in the county of Morris, upon property of the prosecutor, in 1851. Several questions were raised and discussed in the course of the argument at the bar, which will be noticed in order.

The defendant in *certiorari* moved to quash the writ, on the ground that the allowance of writs of *certiorari* was matter of discretion, which ought not to be exercised in cases where great public inconvenience would ensue, and where the errors complained of were of a merely technical character; and that the collection of a large amount of the taxes assessed in this township had been suspended by this and other writs to the detriment of the public; and in the second place, on the ground that in this case the prosecutor had not applied to the commissioners of appeal of the township to have the errors complained of rectified before resorting to this remedy.

1. If the errors complained of in this case were purely technical, matters of form rather than substance, the first ground for quashing this writ might prevail; but this is not the case here. Some, at least, of the errors assigned are matters of substance, involving the construction of statutes and the powers of the assessor: and if the people of a township, through their agents, attempt to extract money upon doubtful authority from one of their citizens, they must abide by the consequent inconvenience which must result from a judicial review of the proceeding. The cases on this point are to be found collected in *The People* v. *The Supervisors of Allegany*, 15 *Wend.* 198.

2. It is eminently proper that, in all cases of complaint in matters of assessment, the party considering himself aggrieved should first apply to the commissioners of appeal for relief. The legislature have constituted this body a court of appeal in cases of unjust assessments, and have clothed it with ample powers to hear and determine such appeals in a speedy and effectual manner. *Rev. Stat.* 1024, 1014, 1015. And in ordi-

nary cases, where this relief has not been sought, it will be good ground, in the discretion of the court, to refuse the writ. But the common law remedy by writ of *certiorari*, even before appeal, has not been taken away by statute; its exercise rests in the discretion of the court; and where legal questions of importance arise, this discretion will be exercised as well before as after an appeal. The present is a case in which I cannot say the writ ought not to have been allowed, and therefore the motion to quash must be denied.

We proceed, then, to consider the errors assigned by the prosecutor, and upon which he asks that the assessment in this case be set aside or corrected : and

1. It is alleged that the sum of $1300 for the use of schools, $2000 for roads, and $100 for the support of the poor, was assessed without any legal authority, inasmuch as there is no record of any town meeting held in the year 1851, at which these or any other sums for these purposes were voted by the people. A duly certified record of "minutes of the annual town meeting held in Morristown, Morris township, at Cooper and Beland's hotel, opening at eight o'clock in the morning, and closing at seven o'clock in the evening," however, is produced, taken from the minute book of the township, by which it appears the above sums were duly voted to be raised. It does not state either the year, or the time of the year, when the meeting was held ; but it appears in evidence that these proceedings are entered in the book between the record of those of 1850 and 1852, and that they are a true record of the proceedings of the annual town meeting of the inhabitants of that township, which was held on the second Monday of April, 1851, the time fixed by law for holding the same. This is sufficient. The mere omission of the clerk to enter in the record the *time* when the meeting was held, cannot be allowed to have the effect of rendering the proceedings of that meeting a nullity. Evidence cannot be received to contradict the record, but it may be received to supply a palpable omission in it.

2. It appears that the assessor, in addition to the sum of $3324.43 for county purposes, was authorized, by the vote of the town meeting, to assess $1300 for schools, $2000 for roads,

and $100 for poor, for the township, and that he added, in making his assessment, $998.71 for *contingencies,* and $861.57 *additional* for roads. He did this in the exercise of what he considered a discretion vested in him by established custom, and for the reason, as he alleged, that these additional amounts were necessary to cover losses which were to be anticipated in collecting the taxes, &c. This proceeding on the part of the assessor was illegal. *Joyner* v. *Egremont,* 3 *Cush. R.* 567. The law vests in assessors no such authority. The power of fixing the amount of taxes for state purposes is vested in the legislature, for county purposes in the boards of chosen free-holders, and for township purposes in the people in town meeting assembled, *exclusively.* Assessors and collectors are the mere instruments to execute the mandates which emanate from these bodies. The taxing power in every case may, and must, be relied on to provide for contingencies of this kind. The power assumed in this case by the assessor is of too arbitrary and dangerous a character to be countenanced for a moment : and therefore, so much of the assessment as embraces these sums of $998.71 for contingencies, and $861.57 additional for roads, is erroneous, and must be set aside.

3. The next error assigned is the assessment upon stocks held by the prosecutor in the Central Railroad Company and the Morris and Essex Railroad Company. In the case of *The State* v. *The Collector of Chatham township,* decided at the present term, it is held that the *property* of the Morris and Essex Railroad Company is exempted by its charter from all taxation, except that specially imposed by the 15th section. In the case of *The State* v. *Branin, collector,* also decided at the present term, it is held that an exemption of this character includes the *stock* of a company in the hands of the stockholders. The charter of the Central Railroad Company contains the same clause of exemption as that of the Morris and Essex Railroad Company, and the stock of both these companies comes within the principle of the cases decided. This assessment must consequently be set aside, so far as these stocks are concerned.

4. The last error assigned is, that the assessor assessed certain stocks of the Merchants and Traders Bank of New York and the Floating Dry Dock Company of the city of New York

in the hands of the prosecutor.. We have decided, in the case of *The State* v. *Branin, collector*, above referred to, that extra-territorial stocks are taxable. There is no error in assessing these stocks.

The CHIEF JUSTICE concurred.

CITED *in* State v. *Sickles*, 4 *Zab.* 126; State v. *Flavell, Id.* 383; *State* v. *Powers, Id.* 401; State v. *Betts, Id.* 557; *Newark City Bk.* v. *Assessor*, 1 *Vr.* 20; *State* v. *Miller, Id.* 370; State v. *Ferguson*, 2 *Vr.* 119–126; *State* v. *Collector of Delaware*, 2 *Vr.* 197; State v. *Hart, Id.* 436; State v. *Jersey City, Id.* 577; State v. *Cook*, 3 *Vr.* 353; State v. *Blauvelt*, 5 *Vr.* 263; State v. *Haight*, 6 *Vr.* 284; State v. *Saalman*, 8 *Vr.* 159; State v. *Jones*, 9 *Vr.* 85; *Mor. Can. & Bkg. Co.* v. *Central R. R. Co.*, 1 *C. E. Gr.* 436.