ANN C. BUCHANAN *vs.* THE COUNTY COMMISSIONERS OF TALBOT COUNTY.

### TAXATION.

*What property liable to assessment and taxation—Act of 1874, ch. 483—Taxation of Debts—Power of Legislature to exempt property from Taxation—Private Securities.*

The terms employed in the 2nd section of the Act of 1874, ch. 483, are general and comprehensive, providing that all property of every kind, nature and description within the State, including, amongst other things, all debts secured by, or invested in, private securities of every kind, nature and description, except mortgages, shall be liable to assessment and taxation.

It is evident that it was not the intention of this Act to impose taxes upon every kind of debt. Express discrimination is made as to the character of the debts liable to taxation.

The authority of the Legislature to make such discriminations, and to exempt any species of property from taxation cannot be questioned.

But the *purpose* to make discrimination, or to exempt any property, should be clearly expressed or necessarily inferred from the terms employed.

Every reasonable intendment must be made that it was not the design to surrender the power of taxation, or to exempt any property from its due proportion of the burden of taxation.

Funds invested in private debts or securities are liable to taxation under the Act of 1874, ch. 483.

APPEAL from the Circuit Court for Talbot County.

This suit was instituted by the appellees in the Circuit Court for Talbot County, for the recovery of $145.32, with interest thereon, being the amount of tax due to Talbot County, for the year 1876, on $19,638.00, the assessed value of certain legacies bequeathed for the use of the appellant, for life, by the last wills of her deceased father, Edward Lloyd, and her deceased mother, Sally Scott Lloyd.

Edward Lloyd, the father of Mrs. Buchanan, devised to his sons, Edward, Murray and Daniel, in trust for her, a tract of land called Davis' Farm, together with the sum of $5,000. The trust, so far as is necessary to state it for the purposes of this case, was to "collect and receive the profits and interest of the said lands and money," and pay them over to Mrs. Buchanan to her separate use for life. The will further provided that Murray Lloyd should attend to and manage his sister's affairs during their joint lives. By a codicil to this will, the testator revoked the devise of the Davis' Farm and gave it to his son Daniel, in consideration of the payment to Mrs. Buchanan, by the latter, of $10,000. He gave to the same trustees for Mrs. Buchanan, in lieu of the farm, the sum of $15,000 on the

same trusts, of which $10,000 was to be paid by his son Daniel and $5,000 by his son Edward, in consideration of which payment by the latter, he gave him also a farm. No part of this money or the additional $5,000 given by the will, was ever paid to the trustees out of the deceased's estate, nor did Edward or Daniel Lloyd ever set apart or invest for Mrs. Buchanan any portion of the fund, except $7,500, with which they bought a farm called "The Rest," on which the taxes have always been paid and which is not involved in these proceedings. Edward Lloyd, (the son) however, became the purchaser of his brother Daniel's estate in the farm devised to the latter and assumed payment of the interest on the legacies to his sister, which he duly paid while he lived. On the death of Edward Lloyd, (2nd) however, no part of his personal estate was applied to payment of those legacies by his son and executor Edward Lloyd, (3rd) but he has simply gone on paying the interest upon them to Mrs. Buchanan, as his father did before him.

Certain other moneys bequeathed to Mrs. Buchanan by her mother, are in precisely the same condition as those above mentioned, and it is admitted that the amount ($19,638) taxed by the Commissioners and for the taxes on which this suit was brought, is composed entirely of the uninvested money in the hands of the present Edward Lloyd, on which he pays interest as aforesaid.

It is further admitted that all of the real estate aforementioned has duly paid taxes in the hands of its several owners, without diminution or deduction by reason of the indebtedness aforesaid to Mrs. Buchanan, and that the present Edward Lloyd pays taxes on all his real and personal estate without any such diminution.

The fund in question is taxed by the appellees as "private securities," and the question is as to whether it is lawfully taxable as against Mrs. Buchanan, under the law existing prior to the legislation of 1876.

The cause was argued before BARTOL, C. J., MILLER, BRENT and STEWART, J.

*S. T. Wallis*, for appellant.

The liability of the appellant for the tax which is sought to be imposed must arise, if at all, under the 2nd section of the Act of 1874, ch. 483. The only expression therein used which can possibly apply to the case is the following : " All debts secured by, or investments in private securities of any kind, nature and description, * * * * * shall be liable, &c." The naked enquiry, therefore, is whether the trust interest held by Mrs. Buchanan under her father's will, is a debt secured by private securities, or an investment in private securities of any kind. The County Commissioners have classified the fund simply as " private securities," and taxed it under that name.

It does not appear necessary to consider the question whether the legacy to Mrs. Buchanan is or is not a charge upon the lands devised by her father to his sons, Edward and Daniel, respectively. By the terms of the will it was made a debt from those gentlemen to their sister, and it is very clear that a distinct personal liability was created and accepted. It was not the intention of the testator that the money should remain uninvested, for his express direction was that it should be paid over and invested in some safe fund, and that his sons should pay interest upon it, till such investment should be made. By common consent, and in reliance upon the credit and sufficiency of the trustees and debtors, the matter appears to have been left tacitly as it was in the beginning, and the money has never been invested as the case stated concedes. No claim has ever been made against the personal estate of the testator or either of his sons. The amount has been simply treated and recognized as a debt, in the just confidence existing between persons so nearly allied in blood and affection. No security has been asked or given for

the payment of the money, principal or interest; and the question, whether, if required to be recovered, it could be realized by a proceeding in equity against the land, as well as a suit at law against the person, is not believed to affect the question of its taxability under the statute referred to. "Private securities," in contemplation of that Act, are believed to be securities given or executed by private persons as contradistinguished from securities of a public nature. There seems no reason for regarding a legacy payable out of the realty, as any more "secured," than a legacy payable out of the personalty, by the source from which it is to come. If such were the law any debt payable out of a fund would be taxable under the statute in question.

It is part of the case stated, that the whole of the land involved has regularly paid its full taxes, undiminished by any supposed charge for the benefit of Mrs. Buchanan. If it is subject to a charge, created in the very initiation of the title of those who took under the will of Col. Lloyd the elder, it would seem very clear, that their real interest in the land was by so much the less, and the county certainly loses nothing by the exemption of what, on that theory, is practically an interest in the same land held by Mrs. Buchanan.

*P. H. Thomas,* for appellees.

It will be contended on the part of the appellees that the legacies in question are liable to assessment and taxation for county taxes, and that the judgment below ought to be affirmed.

Article 15, of the Bill of Rights of this State, after declaring that taxes by the poll are grievous and oppressive, and ought to be prohibited, and that paupers ought not to be assessed for the support of government, provides that every other person in the State, or person holding property therein, ought to contribute his proportion of

public taxes for the support of the government, according to his actual worth in real or personal property.

The Code of Public General Laws, Article 81, section 2, page 554, provides, that "all real and personal property in this State, all chattels, real and personal, (and after specifically enumerating certain property,) and all other property of every description whatsoever, shall be liable to assessment and tax."

The Act of 1866, chapter 157, section 1, provides, that "all property, real, personal and mixed, of all kinds and descriptions whatever, in this State, shall be liable to assessment and valuation, and shall be chargeable with taxes according to the provisions of this Act." *Supplement to Code, Article* 81, *section* 153.

The Act of 1874, chapter 483, is to the same effect.

The above quoted Acts of Assembly, with the supplementary Act of 1867, chap. 341, are all the laws applicable to this case, the Act of 1874, chap. 514, having been pronounced incapable of execution; and it must be conceded, that in regard to property made liable to assessment and taxation, their provisions are unambiguous and comprehensive enough to embrace all legacies, general and special, unless they are in express terms or by necessary implications exempted, or not within the definition of the word "property." It is safe to assert, that there is no law in this State which expressly exempts legacies from assessment and taxation, and the language of the laws above referred to, is too free of ambiguity to justify a resort to presumption or interpretation. The right of taxation is never presumed to be surrendered by the sovereign power, and such surrender is never presumed to be made, unless it be the result of express terms or necessary inference. *Mayor and City Council vs. Baltimore & Ohio Railroad Co.,* 6 *Gill,* 292.

The legal definition of a legacy shows that it is included in and covered by the term "*property.*"

A general legacy is defined to be the testamentary gift of personal estate, as of goods and chattels, or money generally. 1 *Roper on Legacies*, 1.

And that it is taxable property is demonstrated by the provision of Art. 18, sec. 124 of the Code, Pub. Gen. Laws, imposing a tax on legacies. In regard to the fact that no part of the money bequeathed for the benefit of Mrs. Buchanan was paid to her trustees by the executors of the testator, out of his personal estate, it may be remarked that a general bond was executed by the executors of Edward Lloyd, and if that were not so, as the executors and trustees were the same persons, the legacy of $5000 in that will passed by operation of law from the executors to the trustees. Edward Lloyd was the sole executor of Sally Scott Lloyd's will, and the legacies in that will to Mrs. Buchanan passed to his hands as trustee.

STEWART, J., delivered the opinion of the Court.

The validity of the tax imposed upon the appellant depends upon the true construction of the Act of 1874, ch. 483, in connection with the antecedent legislation in regard to the assessment and taxation of property, including debts.

With certain reservations, the Act of 1874, ch. 483, repeals the 81st Art. of the Code, and all previous laws inconsistent with its provisions.

The 2nd section of the 81st Art. had provided that all real and personal property in the State, and all debts secured by or due on judgment, decree, mortgage, bonds, bills of exchange, promissory notes for solvent debts, &c., except debts due for goods sold and delivered, and bank notes, should be liable to assessment and taxation.

It seemed to regard the debts secured by or due on the respective instruments specified as alone taxable.

The Act of 1866, ch. 157, provided that all property, real, personal and mixed, of all kinds and descriptions

whatever, should be liable to valuation, assessment and taxation.

The supplementary Act of 1867, ch. 341, provided, amongst other things, for the exemption of all mortgages for purchase money in the hands of the original mortgagee or his executor, &c., together with all equitable liens for the purchase money of lands and real estate remaining due and unpaid.

The terms employed in the 2nd section of the Act of 1874, are general and comprehensive, providing that all property of every kind, nature and description within the State, including, amongst other things, "all debts secured by or investments in private securities of every kind, nature and description, except mortgages, shall be liable to assessment and taxation."

The manifest purpose was not to abridge but to enlarge the basis of taxation.

But it is equally evident that it was not the intention to impose taxes upon every kind of debt. Express discrimination is made as to the character of the debts liable to taxation.

The authority of the Legislature to make such discrimination and to exempt any species of property from taxation according to its views of public policy cannot be questioned.

Its power to do so has been exercised from the origin of the government. Whilst this is the case, the purpose to make discrimination or to exempt any property, should be clearly expressed or necessarily inferred from the terms employed.

Every reasonable intendment must be made that it was not the design to surrender the power of taxation, or to exempt any property from its due proportion of the burden of taxation. *Mayor & City Council vs. B. & O. R. R.,* 6 *Gill,* 288, 292; *Gordon's Ex'r vs. Mayor & City Council of Balt.,* 5 *Gill,* 237; *Mayor, &c. vs. State,* 15

*Md.*, 376, 391; *P. & W. R. R. vs. Wayland,* 10 *Howard,* 393-6.

To exempt the claim of the appellant, it must appear to belong to that class of debts not subject to taxation.

According to the facts admitted in the record, provision was made by the will of her father, for the benefit of the appellant during her life-time, by the payment of the interest of the fund bequeathed, the principal of which was given to others at her death. He directs that until the respective sums are paid over and invested in some safe fund, for her use and benefit, his sons, Edward and Daniel Lloyd, shall annually pay to her legal interest upon the same. Her mother also bequeathed certain moneys to the late Col. Edward Lloyd, as trustee, for the benefit of the appellant for life, the payment of which he assumed, and the interest upon which he paid until his death; and since his death, his son, the present Col. Edward Lloyd, has paid the interest upon both funds, amounting to $19,688, for which she has been taxed.

The fund has thus been provisionally invested to bear interest for her benefit, and the interest thereon has been paid to her.

If the fund would have been the subject of taxation if permanently invested, it is difficult to perceive why it should not be liable to taxation in its existing condition. To give to it the benefit of immunity on that account would be subversive of the whole theory of the Act. The payment of the interest on the fund cannot be treated as a mere gratuity, but has its foundation in the provisions made by the will of her parent, and it is not to be presumed as made without sufficient consideration.

The claim of the appellant cannot fairly be considered otherwise than as a debt or private security, belonging to her and liable to its due proportion of the taxes within the meaning of the Act.

*Judgment affirmed.*

(Decided December 13th, 1877.)