THE MEMPHIS AND CHARLESTON RAILROAD COMPANY and others *v.* JAMES L. GAINES and others.

## October Term, 1877.

CONSTITUTIONAL LAW — EXEMPTION FROM TAXATION. — The State Constitution of 1870 having expressly provided that "all property shall be taxed," an act of the Legislature exempting from all other taxation, for a limited period, any railroad company which would accept certain amendments of its charter, and pay annually to the treasurer of the state one and one-half per cent of its gross receipts, is beyond the competency of that body, unconstitutional, and void; and this, although one of the accepted amendments of the charter provided for the relinquishment, after the period of exemption, of all exemptions from taxation contained in the original charter of the company.

TAXATION — CHARTER EXEMPTION. — The charter of a railroad company contained the following provision: "The capital stock of said company shall be forever exempt from taxation, and the road, with all its fixtures and appurtenances, including workshops, warehouses, and vehicles of transportation, shall be exempt from taxation for the period of twenty years from the completion of the road, and no longer." *Held*, that whatever meaning may be given to the words "capital stock," which is forever exempted from taxation, "the road, with all its fixtures and appurtenances, including workshops, warehouses, and vehicles of transportation," became liable to taxation, like other similar property, upon the expiration of the limitation of twenty years.

*Humes & Poston*, for the complainants.
*Heiskell*, for the defendants.

THE CHANCELLOR : — A number of bills have been filed in this court by different railroad companies against the railroad-tax assessors for the state, and the state comptroller, to test the question of their total or partial exemption from taxation under the assessments made. Upon application, I granted a preliminary injunction to prevent the assessments being acted on until the rights of the parties could be determined. The cases of three of the railroad companies have been selected as test cases, and submitted to me upon demurrer, which, it is agreed, raises the points in issue. These are the cases of the Memphis and Charleston Rail-

road Company, the Mobile and Ohio Railroad Company, and the Knoxville and Charleston Railroad Company.

By the State Constitution of 1870, art. 2, sec. 28, it is provided : " All property, real, personal, or mixed," with certain specific exemptions not material to the present litigants, " shall be taxed." " All property shall be taxed according to its value, that value to be ascertained in such manner as the Legislature shall direct, so that taxes shall be equal and uniform throughout the state. No one species of property from which a tax may be collected shall be taxed higher than any other species of property of the same value." Section 29 provides : " The General Assembly shall have power to authorize the several counties and incorporated towns in this state to impose taxes for county and corporation purposes respectively, in such manner as shall be prescribed by law ; and all property shall be taxed according to its value, upon the principles established in regard to state taxation." The Legislature undertook to regulate the taxation of railroad companies, for the first time, by the act of March 24, 1875, ch. 78, entitled " An act declaring the mode and manner of valuing the property of a railroad company for taxation." The first ten sections provide for the appointment of three railroad-tax assessors, the mode in which they shall assess the property of railroad companies, the revisal of their action by a board of examiners consisting of state officers, the return of the final valuation to the comptroller of the state, and the notification by him of the clerks of the various counties and the mayors of incorporated towns through which the roads may run, of the amount to be taxed in said counties and towns respectively. There are other provisions, regulating the manner of collecting the taxes. Section 11 of this act exempts from the provisions of the preceding sections " each and every railroad company which will accept, as a special amendment to its charter, for a period of ten years from the 1st day of January, 1875," and will pay annually to the treasurer of the

state, to be in full of all taxation, one and one-half per cent on the gross receipts, from all sources, of such company. The exemption was coupled with the condition that the charters of all railroad companies accepting the provisions of the section be so amended that, after the expiration of said ten years, no exemptions of any property of said company shall exist, but such property should be on the same footing as the property of other corporations or individuals.   And the charters of all such railroad companies were so amended that, after the lapse of said ten years, every provision of the charters exempting .their property from taxation was declared null and void.

Under this act, the Louisville and Nashville Railroad Company accepted the provisions of the eleventh section, amended its charter in accordance therewith, and paid into the treasury of the state one and one-half per cent of its gross receipts.   The charter of this company contained no exemption of property from taxation, but the company owned by lease and purchase other railroads in this state which did claim exemptions.   By the amendment of its charter in accordance with the requirements of the eleventh section of the act, the company renounced all claim of exemption for any of its roads or branches so bought and leased, in the state of Tennessee.   Nevertheless, the county of Sumner, through which the Louisville and Nashville Railroad runs, levied a tax for county purposes on the value of the road in that county, as ascertained by the railroad-tax assessors and board of examiners under the ten first sections of the act of 1875.   The company superseded the collection of this levy by petition to the Circuit court, based on its acceptance of the terms of the eleventh section, and the litigation thus initiated was terminated by a decision of the Supreme Court of the state, at Nashville, on February 3, 1877, reported in the Com. Leg. Rep. of March 11, 1877, under the style of *Ellis* v. *Louisville and Nashville Railroad Company*.

The court held, Deaderick, C. J., delivering the opinion,

that, under the provisions of the State Constitution of 1870, already cited, which imperatively require that all property shall be taxed, and taxed according to its value, the eleventh section of the act of 1875 was unconstitutional.   "The first ten sections of the act," say the court, "do aim at uniformity and equality.   But the eleventh section proposes to release the companies, for one and one-half per cent of their gross earnings, from the operation of the equal and uniform taxation provided in the preceding sections; and substitutes unequal taxation, or exemption from all taxation, for the annual payment of a sum to be ascertained, indefinitely uncertain in amount, and dependent upon the amount of their business.   The eleventh section does not purport to ascertain the value of the property of the companies, nor does it purport to levy a tax upon such property according to its value.   But, on the contrary, it proposes to relieve them from the equal and uniform tax upon their property levied by the preceding sections, and to accept one and one-half per cent of their gross earnings in full of all taxation.   The Legislature may direct the mode of ascertaining the value of property, but it cannot tax it otherwise than according to its value.   It may choose what agencies it thinks best to ascertain the value of property, but the taxes imposed must be equal and uniform.   Under section 11, for a consideration the Legislature has contracted, in effect, not to tax property of railroad companies at all.   This cannot be done under our present Constitution."

It was argued by the railroad company that the surrender of the exemptions in favor of the roads owned by it, under lease or purchase, ought to take the case ought of the general rule thus clearly and broadly announced.   But the court say: "'The surrender of the supposed immunity from taxation, though it might be a good consideration for the grant of special exemptions or privileges in the absence of any constitutional prohibition to make such grant, can-

not give validity to an act of the Legislature which it is prohibited by the Constitution to pass."

In view of, and with special reference to, this decision, the Legislature, on March 20, 1877, passed an act to amend the act of 1875. This act, among other things, directs the railroad-tax assessors to assess all railroads in the state, " and where any railroads have not been assessed for taxation, under the first ten sections of the act of March 20, 1875, by reason of having accepted and complied with the provisions of section 11 of said act, or for any other cause," to assess such railroads for the years 1875 and 1876, and also all railroads in the state for the years 1877 and 1878. By section 9 it is provided that all railroads which accepted and complied with the provisions of section 11 of the act of March 20, 1875, " shall be entitled to a credit for the amounts respectively paid by them to the state upon the amounts due by them to the state under the assessment made, or to be made, under this act and the act of March 20, 1875, for the years 1875, 1876, and 1877; and if the amounts so paid by said companies shall exceed the assessment for said years, the excess shall be refunded by the state to said railroads, with interest."

The Memphis and Charleston Railroad Company was chartered on February 2, 1846, and its road was completed on March 28, 1857. Section 38 of its charter is in these words: " The capital stock of said company shall be forever exempt from taxation, and the road, with all its fixtures and appurtenances, including workshops, warehouses, and vehicles of transportation, shall be exempt from taxation for the period of twenty years from the completion of the road, and no longer." Such an exemption, it has been held by our Supreme Court, was within the competency of the Legislature to grant, under the Constitution of 1834. *The State* v. *Farrington*, MS. opinion, at Jackson; *Knoxville & Ohio R. Co.* v. *Hicks*, 1 Memphis L. J. 75. The limita—

tion of twenty years in the exemption of the road, its fixtures, and appurtenances, did not run out until March 28, 1877. Previous to this latter date, the company accepted the provisions of section 11 of the act of 1875 as an amendment of its charter, and paid into the treasury of the state one and one-half per cent of its gross earnings for the years 1875 and 1876. The company insists, in its bill, that section 11 of the act of 1875 became, by its acceptance thereof and payment of taxes as aforesaid, a part of its charter, and that the subsequent act of 1877 impairs the obligation of the contract thus created, and is, therefore, unconstitutional and void. It further insists, if this be not so, that its property was exempt from taxation to March 28, 1877, under its original charter, and that the assessments of this property for the years 1875, 1876, and 1877, by virtue of the act of 1877, were in violation of the contract of exemption, unconstitutional, and void. It also claims that the exemption of its capital stock by section 38 of the charter necessarily exempts its property, in which its capital stock is vested, and of which it in reality consists, and, therefore, the assessments in controversy are violative of the obligation of the contract created by that section, unconstitutional, and void. It is likewise claimed that any appropriation of the moneys paid into the treasury of the state, in virtue of the acceptance of section 11 of the act of 1875, to the satisfaction of any supposed taxes due to the state under the new assessment, would, if these assessments were invalid for any of the foregoing causes, be wrongful, and contrary to the provisions of section 9 of the act of 1877, as before quoted.

In the opinion delivered by me upon the preliminary application for an injunction, I suggested that the first of these grounds had perhaps been already settled adversely to the complainant. " If," I said, " the equity of the complainants rested upon their acceptance of the terms of the eleventh section of the act of 1875, and the violation by the

act of 1877 of the supposed contract thereby created, I should have grave doubts whether I was not concluded by the decision of the Supreme Court in *Ellis* v. *The Louisville and Nashville Railroad Company.* The court, in that case, treated the act of 1875 as a purely revenue law, and expressly held that the Legislature could not, at any rate by such an act, agree, for a consideration, to exempt railroad property from the equal and uniform taxation prescribed by the State Constitution." A further study of that decision has removed all doubt as to its scope and meaning. It plainly holds that a tax of a certain per cent on the gross income of railroad companies is not a tax upon the property of the companies at all, but an exemption from such taxation, and beyond the competency of the Legislature, under the new Constitution of 1870. It goes further, and directly meets the argument which has been most earnestly and ably pressed upon me by the learned counsel for the complainants, namely, that the existing exemption of the railroad property from taxation took it out of the mandate of the Constitution, and left the Legislature at liberty to make any contract it saw proper in relation thereto. The court say : " The surrender of the supposed immunity from taxation, though it might be a good consideration for the grant of special exemptions or privileges in the absence of any constitutional prohibition to make such grant, cannot give validity to an act of the Legislature which it is prohibited by the Constitution to pass." It is true that there was no exemption then existing in relation to the property of the Louisville and Nashville Railroad Company, the subject of taxation in that suit, and, therefore, the premise on which the argument is rested did not exist. But the argument, if it is to have any bearing on the case before us, must be held to go to this extent : that if an exemption exists at the date of the contract, no matter for how short a time it is to continue, it will sustain a contract for exemption for any length of time the Legislature may determine. For, the exemption

which existed in 1875 as to the property of the company ran out, so far as this argument is concerned, on March 28, 1877, and the exemption secured by the supposed contract extended for about eight years longer. The decision is, that the surrender of an immunity from taxation, though a good consideration for any thing the Legislature can constitutionally grant, cannot confer upon the Legislature a power it is expressly forbidden to exercise. The constitutional mandate that " all property shall be taxed " prevents the Legislature from granting any exemption whatsoever, no matter what may be the consideration. It can make no difference, therefore, whether the immunity surrendered be on the same property or on other property, or what may be the consideration, it is beyond the legislative competency to grant an exemption of property from taxation. It is not the nature or extent of the consideration which is to be looked to, but the legislative power. It is precisely as if the Constitution had forbidden the Legislature to pledge the state credit for any purpose, and the Legislature were to undertake to buy up existing indebtedness by pledging the state credit for a longer period. However supreme its authority may be in other directions, or however wise and judicious may be the exercise of its authority in the particular direction, the question is one of constitutional power. The court say the Legislature is expressly forbidden to exempt. Existing exemptions cannot, of course, be interfered with, but new exemptions are beyond legislative competency. It has unlimited power to deal with existing exemptions, provided it does not extend them, or grant other exemptions. The consideration it pays may take any other shape but *that*. *Trask* v. *Maguire*, 18 Wall. 392, 407.

In this view, the rule of uniformity of taxation, prescribed by the same section of the Constitution, has nothing to do with the question of power. The court concedes that the Legislature may direct the mode and choose the agencies

for ascertaining the value of property, but must then tax, equally and uniformly, according to the value. And it holds, expressly, that a percentage on gross income is not a tax on property at all.

Feeling satisfied that the Supreme Court has thus settled that the eleventh section of the act of 1875 is unconstitutional and void for the want of power in the Legislature to pass it, I am relieved from the necessity of considering whether it is not also void for want of the constitutional forms, in view of the provision of the Constitution of '1870, Art. II., sec. 17, that " no bill shall become a law which embraces more than one subject, that subject to be expressed in the title ; " and of the further provision, Art. XI., sec. 8, that " no corporation shall be created, or its powers increased or diminished, by special laws." The point was not made in the argument submitted, and I do not, of course, feel bound, under the circumstances, to pass upon it.

The eleventh section of the act of 1875 being void, any thing which has been done under it would be void also. The Memphis and Charleston Railroad Company having obtained nothing by its acceptance, is, of course, entitled to stand upon its preëxisting chartered rights, and claim the exemptions of the thirty-eighth section of the act incorporating it. These exemptions, as we have seen, are valid under the Constitution of 1834, and cannot be impaired by the Constitution of 1870, or any legislation under it. *Union Bank* v. *The State*, 9 Yerg. 490 ; *Farrington* v. *The State*, Sup. Ct. U. S., October term, 1877. Any assessment of the property of the corporation for purposes of taxation previous to March 28, 1877, when the twenty years' limitation expired, would be in plain violation of the obligation of the contract. To that extent the complainant is entitled to a perpetual injunction ; and the demurrer being to the whole bill, and not meeting this equity, is too broad, and must be overruled.

The valuation of the complainant's property, which was

made by the railroad-tax assessors after March 28, 1877, would be good for subsequent taxation, if there be nothing else in the way.   The valuation itself is not complained of, nor is any objection made by the bill, or in the argument, against the validity of the acts of 1875 and 1876 for any of its directions touching the mode of ascertaining the value of " the property belonging to said railroad company." The argument on behalf of the complainant has been addressed to the point that the exemption of the capital stock from taxation forever carries with it an exemption of the property of the corporation, either wholly or partially, and requires a different meaning to be given to the subsequent clause than the words themselves would import.

Undoubtedly the rule is, that apparently conflicting clauses of the same instrument should be harmonized if possible, and, to this end, the letter must often give way to the spirit and intent.   Considering the two provisions of the exemption clause as in conflict, the very learned and able counsel of the complainants have sought to reconcile them in one of two ways.   First, they suggest that the charter of the corporation authorizes it to issue its time bonds, and to secure them by mortgages on its road and other property, and the last clause of the thirty-eighth section may be construed as fixing an exemption on the property, *as property*, distinct from the company's franchise, for twenty years, so as to give additional value to it when sold under the mortgages, leaving it, while held and used by the company, subject to the perpetual exemption as capital stock.   This is a bare suggestion, without any chain of reasoning or authority to sustain it, and, while creditable to the ingenuity of counsel, is too far-fetched for practical purposes.   It is not to be supposed that the Legislature would attempt to attain the end suggested in so obscure a mode.   Besides, exemption from taxation is a personal privilege, which does not follow the sale of property except in a case of the plainest legislative intent.  *Morgan v. Louisiana*, 93 U. S. 217.   And,

whatever may be said in behalf of the suggestion, such a legislative intent is any thing but plain in this instance.

The other suggestion is, that the provisions may be reconciled by confining the taxation of the property of the company, after the expiration of the twenty years from the completion of the road, " to such property as is not used for corporate purposes, and such as is not covered by the term ' capital stock.' " In support of this position, the case of *The Ordinary of Bibb County* v. *Railroad Company*, 40 Ga. 646, is cited and relied on. But the head-note of that case and the opinion of the opening judge have misled the counsel as to what was decided. " The charters of the respective railroad companies," says that judge, " authorize them to purchase and hold all real estate that may be necessary and proper for the purpose of laying, building, and *sustaining* said railroads, and that the said railroads, and appurtenances of the same, shall not be subject to be taxed higher than one-half of one per cent upon their annual net income ; and no municipal or other corporation shall have power to tax the *stock* of said companies, but may tax any property, real or personal, of said companies within the jurisdiction of said corporation, in the ratio of taxation of like property." The learned judge was of opinion that the word " stock " meant the capital of the corporations, citing Bouvier's Law Dictionary, who is manifestly defining the stock of the stockholders. He was also of opinion that " all the property of these companies, necessary and proper for the purpose of laying, building, and *sustaining* their respective railroads, constitutes a part of the *capital stock* of said companies," thus confounding stock, capital, and capital stock as one and the same thing. In this view, he holds that the taxation of the " stock " exempts the property, which, he thinks, it represents, and that the only property which could be taxed by the municipal corporation, under the power expressly reserved, was " property taken for debt, or bought for the use of the companies, but not in actual use."

His two brother judges concurred with him in holding that the particular tax was not enforceable, because, although the state had reserved the power to authorize the municipal corporations to tax the property of the companies, and their whole property, yet it had not exercised the power by the necessary legislation to enable the corporations to assess and levy the tax. And Brown, C. J., meets the suggestion that the right of taxation reserved to the municipalities was confined to property taken for debt, by the unanswerable reply that, in that view, the reservation was pure surplusage. For the state had only relinquished the power to tax the road and its necessary appurtenances, and therefore retained, without reservation, the power to tax outside property. All the authorities agree that property beyond the legitimate wants of a corporation for its corporate purposes is not within an exemption of all property from taxation. *Wilmington R. Co.* v. *Reid*, 13 Wall. 268 ; *The State* v. *Newark*, 1 Dutch. 315 ; *The State* v. *Mansfield*, 3 Zab. 510 ; *Vermont Central R. Co.* v. *Burlington*, 28 Vt. 193.

The Georgia case is, therefore, a direct authority for giving effect to the reservation of a right to tax, although in apparent conflict with an exemption clause connected with it, the chief justice asking, with telling point, why, if the exemption was good, the reservation with which the state had chosen to couple it should not be good also? To the same effect is *Philadelphia Railroad Company* v. *Bayless*, 2 Gill, 355. There, the statute provided that the shares of the capital stock of the railroad company should be exempt from taxation, " except that portion of the permanent and fixed works of the company within the state." The fixed works within the state were held subject to taxation. And it is well settled that a grant of privileges by the state to individuals must be construed in favor of the state. A prohibition, reservation, or exception in a charter must, therefore, stand in full force, although it destroy or

make nugatory all the powers given to the company. *Talmadge* v. *North American Coal & Transp. Co.*, 3 Head, 343. I am clearly of opinion, whatever meaning may be given to the words "capital stock," which is forever exempted from taxation, "the road, with all its fixtures and appurtenances, including workshops, warehouses, and vehicles of transportation," became liable to taxation, like other property, upon the expiration of the limitation of twenty years.

In this view, it becomes unnecessary to determine what was meant by the exemption of "the capital stock." In 1836, Judge Turley defined the capital stock of the bank to be "the whole undivided fund paid in by the stockholders." *Union Bank* v. *The State*, 9 Yerg. 498. But this is clearly inaccurate, unless the stock has all been paid in. It means the stock subscribed, whether paid in or not. *The State* v. *Morristown Fire Assn.*, 3 Zab. 195 ; *Hightower* v. *Thornton*, 8 Ga. 486 ; *Farrington* v. *The State*, MS. opinion of Judge Swayne. Capital stock, in its own strict signification, it has been well said, exists only nominally ; the money or property which it represents is the tangible reality. *Hannibal, etc., R. Co.* v. *Shacklett*, 30. Mo. 558. And this money or property is the capital of the corporation, not the capital stock. The latter phrase is really used in various senses. Strictly, it is the authorized capital actually subscribed ; loosely, it is the fund paid in. Still more loosely, it is the capital of the corporation, whether in money or property. And again, popularly, it is the aggregate of the stock, made up of the shares of the stockholders. I have a strong impression that the words have been used in our railroad charters in the latter sense, and that the exemption was, as the attorney-general argued, intended for the benefit of the stockholders by protecting their shares of stock from taxation. The shares entitle the holders to the dividends of profits, and to the entire property remaining for division. The dividends, in a railroad corporation, are the profits

earned from the use of the whole corporate property and the exercise of the corporation franchises. The corporate property may, as in the present instance, exceed largely the capital subscribed, and the franchise may have a value far above the capital also. The Legislature, while subjecting the tangible property of the company to taxation, like other property, intended to protect the stockholder from the additional tax on the value of his stock as personal property. For, though the capital stock, if taxed as the representative of the property of the company, may protect the latter from taxation (*Gordon* v. *Baltimore*, 5 Gill, 236), or the taxation of the property may protect the capital stock, treated as its representative, the taxing of neither will protect the stock in the hands of the stockholder. " The capital stock and the shares may both be taxed, and it is not double taxation." *Per* Swayne, J., in *Farrington* v. *The State*. The only way in which the exemption of these railroad charters can be held to be beneficially operative is, it seems to me, by treating the exemption as attached to the stock of the stockholders.

The Mobile and Ohio Railroad Company, according to the bill, is entitled to a perpetual exemption of its stock from taxation, and of its property for twenty-five years from April 2, 1861. The assessments of this road, under the acts of 1875 and 1877, clearly impair the obligation of the contract of the charter, and the demurrer is, therefore, not well taken, and must be overruled.

The Knoxville and Charleston Railroad Company is in a different position from either of the other roads. It was chartered by the act of 1852, ch. 244, and its reliance in support of this bill is upon the fifty-eighth section of that act, which is in these words : " That said company is hereby invested, for the purpose of making and using said road, with all the powers, rights, and privileges, and subject to all the liabilities and restrictions, that have been conferred and imposed on the Nashville and Chattanooga Railroad Company

in its original charter." This language is insufficient to·
clothe it with the immunity from taxation contained in the·
charter of the latter company, as held by our Supreme·
Court in *East Tennessee and Virginia Railroad Company* v.
*Hamblin County*, at Knoxville. And see *Morgan* v. *Louis-·
iana*, 93 U. S. 217. As to this road, the demurrer must be
sustained.

NOTE. — Affirmed, on appeal, by the Supreme Court of the state, and the·
Supreme Court of the United States.