7L 561
12L 535
12L 548
14L 63

MAYOR AND ALDERMEN OF THE CITY OF CHATTANOOGA

*v.*

NASHVILLE, CHATTANOOGA & ST. LOUIS RAILROAD CO.

1. CONSTITUTIONAL LAW. *Railroad assessment law. Void.* The meaning of the Constitution, art. 2, secs. 28–9, is, that all property must be assessed upon the same principle; all assessments must be made by the same rule; the basis of valuation must be uniform, and all property assessed at all must be assessed at its real value. By the act of March 20, 1875, all the property of a railroad company, houses and lands, personalty and realty, track and rolling stock, goes into a general aggregate valuation, without any attempt to fix the value of each piece or species of property. This aggregate value is divided by the number of miles in the road, and the value per mile, thus obtained, is multiplied by the number of miles lying inside a county or municipal corporation, and this product is the amount subject to county or municipal taxation. By the uniform practice of this State, since the Constitution of 1834, the property of private citizens is assessed at so much for each article or species of property—personalty and realty are separately assessed. There must not be one rule for railroad companies and another for private citizens. The assessment of the property of both must be governed by the same principle. The act fixes an arbitrary standard of valuation for the property of railroad companies different from that by which the property of individuals is assessed. It practically prohibits counties and municipal corporations from taxing the real property of the company, lying inside their limits, at their actual value. This act is unconstitutional and void. Overruling *L. & N. R. R. Co.* v. *State,* 8 Heis., 663.

2. SAME. *Same. Exemptions.* The act provides, "from the aggregate value is to be deducted the real cash value of individual shares." The constitutional mandate that "all property shall be taxed," prevents the Legislature from granting any exemption whatsoever, no matter what the consideration. The grant of the exemption is unconstitutional and void.

---

FROM HAMILTON.

---

Appeal in error from the Circuit Court of Hamilton county. D. C. TREWHITT, J.

R. M. BARTON, JR., for Chattanooga.

KEY & RICHARDSON for Railroad Company.

FREEMAN, J., delivered the opinion of the court.

This suit was commenced before a justice of the peace for Hamilton county, for the taxes for 1880, and a claim for back taxes alleged to be due for the years 1877–8–9, the entire amount being over six thousand dollars.

A short statement of facts will raise the questions presented in argument, and for decision in this case.

It is admitted that the railroad company had paid in the years 1877–8–9, and tendered the sum due for 1880, according to the valuations and assessments made by the State railroad assessors, as provided for by the acts of the Legislature of 1875 and 1877. But it is claimed these assessments are not binding on the county and city, are unconstitutional, for reasons to be hereafter discussed, therefore said property was not legally assessed at all, and if so, was subject to be assessed by the tax collector, under the act of 1879, sec. 7, providing: "That all collectors of taxes are hereby made assessors, to assess all property which by mistake of law or facts, has not been assessed; and it is hereby made the duty of such collectors, in all cases where property has not been assessed, but on which taxes ought to be paid by law, to immediately assess the same and proceed to collect the taxes, and if the owner of the property admits the liability of the property to taxation, but disputes the assessment, he may have a

re-valuation before the judge or chairman of the county court at any time within one month, and such judge or chairman may hear proof and fix the assessment or valuation, and this shall be final."

The second section provides for contesting the question, when the owner denies the right to tax, or claims an exemption under the Constitution, a law or ordinance, but raises no question as to the amount or value fixed on the property.

We need not, for the purposes of this opinion, cite the other sections of the act, nor examine the questions debated before us, as to their proper construction. Suffice it to say, that the remedy given is, that the tax collector, in case of contest, shall procure a warrant for the taxes claimed and contested, from a justice of the peace, which officer is given jurisdiction to any amount, with right of appeal in case of decision against the property owner.

We may assume in this case, that if the position of the plaintiff is correct, that the assessment of the property by the board of assessors for railroads, is unconstitutional, as to the property owned by the company in the city of Chattanooga, then there has been no assessment at all, and the property may well be assessed for taxation, and the railroad company be compelled to pay the taxes thus assessed.

The vital question in this case is, whether the mode of assessment adopted by the act of 1875, amended by act of 1877, is valid or void.

There is no contest as to whether the property has been assessed at a proper value, but the contention of

defendant is, that it had been assessed by the board of State assessors; that the company had paid the amount thus assessed for all but the year 1880, and had tendered the amount by this mode of assessment for the year 1880.

We proceed to discuss the main question involved in this controversy between the city and the railroad company.

The facts on which the claim of the city is made, are, that by the statutes of 1875 and 1877, the property of the railroad company in the city of Chattanooga is only assessed at from forty-one to fifty-seven thousand dollars, for the several years included in this contest, while the county assessors within the same period fixes its value at from $107,800 to $120,600. It is stated in argument, that in fact it is worth twice these last sums; but that is not a matter for our consideration, be the fact as it may. It is urged, however, on these facts, that the result is, that from fifty to eighty thousand dollars in the value of the property of a railroad in the city is, by this process of assessment, exempt from city taxation. If the fact be, that this difference in valuation is worked by means of, or as the result of the difference in the mode of ascertaining the value of railroad property from that which is prescribed for arriving at the value of other property, then the question of the propriety and constitutionality of a mode of valuation working such results is one that may well be of interest to the other taxpayers of the State, and one that might well have

been anticipated as likely to be raised for solution by the courts.

It is not contended by the plaintiffs, as we understand it, as we have said, that the board of assessors have not fairly assessed the property in accordance with the laws under which they acted; nor is it alleged that the county assessor has put too high a valuation on the property, when fixing its value on the principles by which other property is valued for State and county purposes. The contention on the part of the plaintiff is, that the difference is the result of, and produced by a vicious and unconstitutional mode of assessment prescribed for the guidance of the board of assessors, contrary to and different from the rules prescribed for valuation of other property of the citizen for like taxation by the laws of the State regulating this subject, and in violation of the Constitution of the State.

The provisions of our Constitution on this question are as follows, so far as necessary for its solution:

"All property, real, personal or mixed, shall be taxed; all property shall be taxed according to its value, that value to be ascertained in such manner as the Legislature shall direct, so that taxes shall be equal and uniform throughout the State. No one species of property from which a tax may be collected, shall be taxed higher than any other species of property of the same value."

"The general assembly shall have power to authorize the several counties and incorporated towns in this State to impose taxes for county and corporation pur-

poses respectively, in such manner as shall be prescribed by law; and all property shall be taxed according to the principles established in regard to State taxation."

The power of taxation being inherent in the very idea of a government, as understood among all people who live under a constitutional system, whether written or unwritten, the law-making power can freely exercise that power and to the extent it may deem proper, in most cases, at any rate except in so far as restrained or regulated by the Constitution under which that department acts. All limitations or restraints, or regulations existent, however, in the Constitution of the State under our system are imperative, and any action in violation of these is necessarily void.

It is clear from the provisions quoted, that the limitations upon the exercise of the taxing power in reference to all property in our State are, that *all* property be taxed according to its value, so that taxes shall be equal and uniform throughout the State, and " no one species of property from which a tax may be collected, shall be taxed higher than any other species of property of the same value." This value, however, as is provided, is to be ascertained in such manner as the Legislature may direct. That is, the mode of ascertainment or means or agencies to be adopted by the Legislature for such ascertainment, is left to the discretion of that body. It may be by the justices of the civil district, as formerly, or by a county assessor, as provided by the act of 1875, or as required by the act of 1877, by assessors for each

district of the county, and in cities divided into wards, by an assessor for each ward. Any mode of ascertaining the value of the property may be prescribed that tends to reach the result required, such as personal inspection by the assessors, inquiring of parties familiar with such values, testimony of witnesses, the income received from such property, its capacity of yielding profits, its situation, convenience to markets, nearness or distance from great lines of transportation to such markets, and the like. In a word, all the elements that enter into the value of property of any and all kinds may be looked to by the most convenient or by any means adapted to the end, in order to arrive at the result required. Any and all agencies serving the same purpose may be used or prescribed by the Legislature for the purpose indicated. In these matters the Legislature has the freedom of an unlimited discretion. But on the value thus ascertained the tax must be laid, and it must be equal and uniform throughout the State, and the assessment so made that no one species of property shall be taxed higher than any other species of the same value. The principle on which the value is ascertained, must necessarily be the same in order to this result. There can be no variable amount demanded or fixed on this value for the whole State, nor in any defined division of territory, as a county or incorporated town, having the power to levy taxes. Such taxes must be levied on the same principle as that prescribed for State taxation: Constitution, art. 2, sec. 99.

It is not meant, as a matter of course, that pre-

cise accuracy in valuation must be had—this is impossible; but what was intended is, that all shall be valued under the same principle, and the agencies employed shall certainly be guided and bound by the same rule in ascertaining the actual value. For instance, if the Legislature should prescribe that in one county or incorporated town, the value of real estate should be fixed alone on the basis of its rental value, in another on the principle of what it could be sold in market for at cash sale, in another on one and two years' time, it would not be doubted that this would violate the letter and spirit of the Constitution. In reference to personal property, such as horses and cattle, in one county if this property should be valued on the basis of the pedigree of the animal, whether it was of such a race or blood, and in another county or corporation its market value for cash or on a fixed time should be made the basis of valuation, it would hardly be contended that these modes, variant from one another, would not be in violation of the requirements cited. It may be that in fact, in many cases, the same result might possibly be attained, or that one mode might in many cases give the same, or practically the same result as the other. But the rule is different, and necessarily tends to inequality of valuation, and this the Constitution intended to forbid. Therefore we assume it was purposed that all property should be valued by the same rule, and that, to meet the requirement that "no one species of property from which a tax is collected shall be taxed higher than any other species of property of the same value." If

different elements of value are to be looked to in valuing the various species of property, of necessity a different value will be reached, and so there could be no equality in the taxes charged, except by accident, as the amount depends on the ascertained value, and rises and falls with the amount fixed.

The principle of the Constitution is, that all property taxed at all, shall be taxed at *all* its value, and all the elements of value shall be taken into consideration, none *arbitrarily* excluded, at least in its ascertainment. Any system or rule of valuation, that values one species of property on a principle different from this, must be essentially vicious. We need scarcely say, that value must mean the worth of the property as compared with the money of the country, the standard by which all values are regulated. We think it not improper to add, that the distinct requirement of the Constitution is, that all property shall be taxed, real, personal or mixed, and the Constitution has itself defined the exceptions to this requirement. The Legislature, it would seem, has no authority to go beyond, in this direction, what is thus specified in plain terms by that instrument. In what way a failure to obey the Constitution in these respects can be brought before a court, and what the remedy, we need not attempt here to discuss. Let us try the statute of 1875 by these principles, and ascertain the result.

The principle on which railroads and their property is valued for taxation, is found in secs. 1 and 3 of the act of March 20, 1875. It is as follows:

" That each railroad company owning and operating

a railroad in the State shall, on or before the first day of May of each year, make out and file with the comptroller of the treasury a complete schedule of all its property, real, personal or mixed, setting forth therein the length in miles or fraction thereof of its entire road-bed, switches and side-tracks, and showing how many miles or fractions thereof lie in the State, in each county of the State through which the road passes, and in each incorporated town, and the value of the whole, and each part thereof, as sub-divided herein; the total amount of capital stock; the number of engines and their respective values; the gross annual receipts; the number of cars of all characters, their classes and value; the number of depot buildings and warehouses and other buildings; in what county and incorporated town located and the value of. each, including the lands and lots upon which the same are built; the value of all machine shops and stationary machinery and tools therein, and in what county and incorporated town located, including the land on which the same are built; all real, personal or mixed property belonging to the company within the State, not above enumerated, with its value."

The second section provides for filing these schedules of all property specified, and the appointment of three "railroad assessors" by the Governor.

Section third provides for their meeting, and that they shall proceed at once to ascertain and test and value the property belonging to the railroads, as shown by the schedule. "In making such valuation," they are required "to look to the capital stock, the corpo-

rate property, the franchises of each company, as well as the gross receipts, and the individual stock of each shareholder." Then follows the means of ascertaining these matters. Having ascertained, in the matter indicated herein, the character and total value of the property, wherever situated, of the railroad company, and after having deducted from the aggregate value one thousand dollars, as well as the *real cash value* of the *individual shares,* they shall divide the sum by the number of miles in the entire length of the road, and the result shall be the value of the property of such company for the purposes of taxation, and the value per mile of any such railroad company, as ascertained above, shall be multiplied by the number of miles in the State, and the product thereof shall be the sum taxed to such railroad company for State purposes; and the value per mile, as ascertained, shall be multiplied by the number of miles or fractions thereof, lying and being in any county, and the product shall be the sum taxed for county purposes; and having ascertained said several sums to be taxed, they shall certify the same to the comptroller, together with the facts.

It is then provided, sec. 7, that the comptroller shall ascertain the amount due the State from each and notify the company, and shall certify to the county court clerk of each county in which a railroad lies, the amount to be taxed in said counties for county purposes, and likewise to the "Mayor of any incorporated town, the amount to be taxed by such town, etc.

We may summarise all these provisions as a sys-

tem by which all the real, personal and mixed property of a railroad, including its track, specified in the first section, and required to be returned by the schedule, is to be valued or assessed for taxation. The whole value of the property of all three kinds is first ascertained, then an exemption of one thousand dollars, as required by the Constitution, is deducted from the aggregate, and then the real cash value of the individual shares is deducted. Then the assessors shall divide the aggregate thus left, by the number of miles in the entire length of the road, and the result shall be the value per mile of the property of such company for the purposes of taxation; then the value per mile as thus ascertained above, shall be multiplied by the number of miles in the State, and the product be the sum to be taxed for State purposes; and so the value per mile as multiplied by the miles in a county or town, or a fraction thereof, in county or town, for county or corporation purposes.

We may remark, as the first aspect of this system, that it assumes all the property required to be returned by the companies in their schedules, is combined into the idea of "railroad property," the title of the act being "an act to declare the mode and manner of valuing the property of a railroad company for taxation." These schedules are required to contain all the property, *real, personal and mixed,* of the company; all this property then is to be taxed on a valuation ascertained by the process of dividing the total value of the property, wherever situated, by the number of miles in the entire length of the road, thus getting the value

per mile of the property of the company for taxation, the value per mile then multiplied by the number of miles in State or county, for State, county and corporation purposes. The simple question is, whether property, real, personal and mixed, can be taxed on this principle. It seems to us hardly to need an argument to show that this is not the rule of uniformity and equality prescribed by the Constitution. Houses, lands, personal and mixed property, by this process go into a general aggregate; but there is not even an attempt to fix the value of each piece or species of property separately, for the purposes of taxation, as in the case of other property of citizens. To do this, assuming the schedules have given the true value, the assessment should be for each article or kind of property at that value. That this is the rule by which all other property is taxed to the citizen, is well known, and has been the uniform practice of the State, at least since the Constitution of 1834, if not before. On what principle a different rule of valuation for railroad property can be sustained, we are unable to see. We take a depot building in a town or city—a warehouse for storage of property to be forwarded or received. This property is not valued as the property of the citizen hard by—at the market value of ground and house—but by an aggregating and dividing process, by which these elements are all combined in and with the length of a railroad track, which may possibly be a thousand miles long, and so, by this arbitrary combination, the tax is laid on the value of a mile of railroad track, which is to cover

all the other property, real, personal and mixed, in the county required to be placed in the schedules. To say this process has the elements of uniformity and equality in it required by the Constitution, would be, as we think, an abuse of terms, an arbitrary assumption with no element of reason to sustain it. The idea of ascertaining the real value of houses and lots, and of the large number of articles of personal property embraced in these schedules by this process, is simply preposterous. This property is not assessed, or purposed to be assessed, at its value, nor does the process have any relation to that end.

It may be noticed, too, that after enumerating "the depots, warehouses and other buildings, in what county and incorporated town located, and the value of each, including lands and lots upon which the same are built, the value of machine shops and stationary machinery and tools therein, including the land on which situated," it is added, and "all real, personal and mixed property belonging to the company within the State, not enumerated above." And all this goes into the aggregate, to be divided by the whole length of the railroad, to ascertain its taxable value per mile; so that it might, with no great departure from accuracy, be said, the rule of valuation of these town lots, houses and property, personal and mixed, is by the value of a mile of railroad. What the value of this property is by this process, we are not able to say, but we certainly know it is not the rule of taxation fixed for all other like property in the State, and we know of no constitutional principle on which railroad

property of this character can be valued by a different rule from that of other citizens.

We may illustrate the inequality involved in this process by another example. Suppose a county near the line of the State, as Shelby; a railroad from Mississippi comes into the county to the city of Memphis, say six miles; in that city it has depots, warehouses, offices, on lots of ground of large value; assume such property, as city property, worth five hundred thousand dollars; suppose the valuation of the track, as reached by this process, shall be five thousand dollars per mile, making thirty thousand dollars. Here is property in the county worth five hundred thousand dollars, which pays a tax to the county at a value of thirty thousand dollars, the real value of which is five hundred thousand dollars, excluding the value of the stock. The real and personal property of the citizen along that line in the county, and around that depot warehouse and other buildings, is taxed at its market value, of five hundred thousand dollars, if worth that sum, while the property of the railroad is taxed at thirty thousand dollars. Is this in accord with the principle of equality, or is the property taxed according to its value by this process? We hardly think any one would so contend. Yet this, we take it, is a fair illustration of the assessment found in the act under discussion.

But we may add other illustrations as to property in incorporated towns and cities. There may be only half a mile of road within the corporate limits, and the road assessed fifty thousand dollars per mile—much more, we believe, than any assessed mile has been valued

at—which would give twenty-five thousand dollars for taxation. While there may be depots, warehouses, machine shops, and all the offices attached to a great railroad center, worth, valued as property, five hundred thousand dollars; yet the city can only tax it at the value arrived at by the assessors, as on a half mile of track value. It is seen in this case something of a fair illustration of the workings of this process; where the valuation by the assessors is forty-one thousand four hundred and eighty dollars, while the county assessors, on the basis of assessment of the citizens' property, give a valuation of one hundred and twenty thousand six hundred and ten dollars.

Other illustrations of the inequality in valuation resulting from the principle of the statute, might readily be given, but this must suffice. We think it beyond doubt, the principle of the act of the Legislature discussed is in violation of the provisions of the Constitution, and therefore the enactment a nullity.

It is proper to call attention to another provision of the act of 1875, that is, the one requiring that from the aggregate value of the property ascertained as required, the one thousand dollars exempt by the Constitution shall be first deducted, and then "the real cash value of the individual shares."

The Constitution has emphatically declared that all property *shall* be taxed, and that it shall be taxed at its value. It has also specified the exemptions which the Legislature may make, and to this extent given that body power by law to make exceptions from the general rule. In the case of *Memphis & Charleston*

*R. R. Co.* v. *Gaines,* 3 Tenn. Ch. R., 611, Judge Cooper has well stated the principle. He says: "The constitutional mandate, that 'all property shall be taxed,' prevents the Legislature from granting any exemption whatever, no matter what the consideration. It is not the nature or extent of the consideration which is to be looked to, but the legislative power. Existing exemptions cannot, of course, be interfered with, but new exemptions are beyond legislative competency." This case was affirmed by this court, and also by the Supreme Court of the United States. We decide nothing as to what may be the effect of exemptions of capital stock in charters of various companies holding such exemptions, nor whether, under these exemptions, in connection with the language of such charters, they may or may not be construed to exempt the individual shares. That, and the like questions, are not before us. We only have a law before us, which on its face proposes to ascertain the aggregate value of an immense mass of corporate property, or property owned by railroad corporations, and then deducts from that value so ascertained, the value of the individual shares, owned in most cases largely by citizens of other States and counties than our own. We know that such a deduction must necessarily lessen the value of the property assessed to that extent; so that property is not taxed at its value, but at the ascertained value, less the value of the shares. We know of no such deduction made in favor of the property of others in the State. It is equivalent precisely to an exemption of the property assessed, to the amount of the value

37—VOL. 7.

of the shares of the stocks.   We think it clear the Legislature have no power to make such an exemption under the Constitution of 1870.   As we have said, however, we do not consider the effect of any exemptions in any railroad charters in this connection, but apply what we have said alone to the words of the act before us.   It does not profess to be based on chartered exemptions, nor to confine its operation to such companies as have such exemptions, but applies to any railroad company in the State, without reference to any exemption in their charters.   No such law can be sustained as an independent enactment, is what we decide.

It has seemed to us, that a law like this, in terms effectually giving exemptions not authorized by a Constitution like ours, which definitely specifies the property which the Legislature may exempt, presents the simple question, as to whether the Constitution or the enactment shall prevail.   To that question there is but one answer.

We do not discuss or decide the independent question as to whether the State may or may not assess the road-bed and rolling stock of a company by a separate agency, and on some such plan as found in this statute.   When that question shall be presented on a law providing for taxing the road-bed and rolling stock separately, it will be time enough to decide the question.   The law before us is not of that character.

It is proper to say, that in this opinion we have not reasoned or concluded in accord with the argu-

ment and opinion of Judge Sneed, in the case of the *Louisville & Nashville R. R. Co.* v. *The State,* 8 Heis., 663. That opinion is not one by which we feel bound as authority on this question, as the court, then consisting of six judges, was equally divided on the main question—never agreed on that—and the opinion was only delivered, under provisions of a statute requiring an affirmance of the judgment below, on an equal division between the members of the court; nor was the question of the mode of assessment so elaborately discussed in that case before the court—that case having arisen in 1874, when we had no such law as that of 1875. This statute was afterwards held unconstitutional, and the opinion is, therefore, not one legally binding. For this reason, we feel less hesitancy in overruling, or rather disregarding and differing with the reasoning and argument of the learned judge who delivered that opinion, as we have done in this opinion. We are satisfied with the correctness of our conclusions on this question, and therefore hold the mode of taxation in the particulars mentioned, in violation of the Constitution, and the law, in the matters discussed, void.

Judgment of circuit court affirmed.